**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Jesus Raul BEJARANO–RAMIREZ,**
**Defendant–Appellee.**

**No. 01–2044.**

United States Court of Appeals,
Tenth Circuit.

May 1, 2002.

Before SEYMOUR and HOLLOWAY, Circuit Judges, and VANBEBBER,

District Judge.*

## ORDER AND JUDGMENT **

HOLLOWAY, Circuit Judge.

On July 8, 2000, evidence alleged to be cocaine was seized from Defendant–Appellee Jesus Raul Bejarano–Ramirez. On August 2, 2000, Bejarano was indicted by a federal grand jury in the District of New Mexico for possession with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A). On September 29, 2000, Bejarano moved to suppress the evidence seized. A hearing was held and on December 7, 2000, the trial court issued a Memorandum Opinion and Order granting the motion. After an order denying a motion to reconsider was entered, the government now appeals.

### I

### A

At approximately 10:39 p.m. on July 8, 2000, New Mexico State Police Officer Doug Looney ("Looney") was patrolling southbound I–25 near Raton, New Mexico when he observed a northbound car driven by Jesus Raul Bejarano–Ramirez ("Bejarano"). The radar indicated that Bejarano was traveling 96 m.p.h. in a 75 m.p.h. zone. Looney pulled Bejarano over, radioed his dispatcher about the stop, and approached the car. The car's windows were tinted and loud music was playing inside. When Looney shone his flashlight through the passenger window, the music was turned down and Bejarano opened the door. He immediately handed Looney written information about his vehicle and said that he did not have his license but that the car belonged to his uncle. Looney questioned Bejarano, who said that he was going to Denver to see friends. Bejarano said that he had a Texas driver's license but had not brought it with him.

Looney asked Bejarano to step out of the car while he wrote a citation. As Looney was writing the citation, the National Crime Information Center notified Looney that Bejarano did not have a Texas license. Looney gave the citation to Bejarano and returned his documents.

Looney testified that he obtained Bejarano's permission to question him further. Aplt.App. 74–75. In response to Looney's questions, Bejarano said that the vehicle belonged to his cousin and that he was traveling from El Paso to Denver. When Looney asked if he had any narcotics or large sums of money in the car, Bejarano said he did not. Bejarano consented to a vehicle search. *Id.* at 27. Looney patted down Bejarano to check for weapons and then began to search the car. Looney observed that both the dashboard and the fuel tank appeared to have been removed and replaced. *Id.* at 81–86. He testified that his police training had taught him that both of these can be indicators of illegal compartments where narcotics or money may be hidden. *Id.* at 82. He also observed that the spare tire in the trunk, although not new, had recently been mounted and balanced, which he said his training had taught him could indicate that the tire was loaded with narcotics or money. *Id.* at 86–87.

* The Honorable G. Thomas VanBebber of the United States District Court for the District of Kansas sat by designation.

** This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

At 10:55 p.m., during the search, Officer Apodaca ("Apodaca") arrived. At 11:05 p.m., Apodaca began to examine Bejarano's wallet, which he found contained a Mexican passport. At 11:13 p.m., after discovering the altered fuel tank, Looney asked if Bejarano would allow a dog sniff of his car. He testified that Bejarano consented. *Id.* at 91. Looney called for a canine unit, and told Bejarano that it would be a few minutes before the dog arrived. However, Looney learned that the sergeant who handled the dog was responding to an accident in Raton and would be delayed. Bejarano twice asked Looney, at 11:20 and 11:24 p.m., how much longer the stop would take. Looney responded that the canine unit was on another call.

At 11:41 p.m., Looney requested a border crossing check on the car. Shortly after that, the El Paso Intelligence Center responded that both Bejarano and the car had entered the United States separately the previous evening from Juarez, Mexico, at 7:45 p.m. and 7:52 p.m. respectively. *Id.* at 99–100. At 11:42 p.m., Looney was informed that the canine unit was delayed because the officer was responding to a burglary in progress. Finally, at 12:09 a.m., the canine unit arrived.

Bejarano again consented to let the dog sniff the car. *Id.* at 29. The dog's handler, Sgt. Encinias ("Encinias"), told Looney that the dog had alerted to the car's trunk, rear bumper, and underside. *Id.* at 97. The search ended one hour and forty minutes after the initial traffic stop. *Id.* at 29. Bejarano refused to sign a form consenting to inspection of the fuel tank, and the car was impounded. An officer drove Bejarano to a 24–hour restaurant in Raton. After several bundles of a substance alleged to be cocaine were found in the car, Bejarano was arrested at a Raton motel.

**B**

A criminal complaint naming Bejarano was filed on July 12, 2000 by Magistrate Judge Garcia. After other proceedings not relevant to this appeal a two count indictment against Bejarano was returned in the District of New Mexico on August 2, 2000. On September 29, 2000 a motion by Bejarano was filed to suppress evidence.

An evidentiary hearing was held on November 2, 2000. On November 6, the government moved to reopen the evidentiary hearing so that it could show the reasons for the canine unit's delay in getting to the scene of Bajarano's detention. The district court did not expressly rule on the government's motion to reopen, but issued a Memorandum Opinion and Order granting Bejarano's motion to suppress, thereby *sub silentio* denying the government's motion to reopen. The government moved for reconsideration, but this motion also was denied.

**II**

The issue on appeal is the propriety of the district court's grant of Bejarano's motion to suppress evidence. We review the district court's findings of fact for clear error, and its conclusions of law de novo. *United States v. Jones*, 213 F.3d 1253, 1258–59 (10th Cir.2000).

The district judge found the initial search consensual in his Memorandum Opinion and Order which denied suppression. Aplt.App. 31. The court found that "... detention began at 10:50 p.m. after [Looney] issued a citation to [Bejarano]." *Id.* at 32–33. The court also found that "[t]he dog sniff did not occur until 12:14 a.m., approximately 84 minutes after the detention of the car began." *Id.* at 33. Therefore, the court reasoned, Bejarano

was detained approximately 84 minutes. *Id.*

We have held that

[a]n officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.

*United States v. Sandoval,* 29 F.3d 537, 539–40 (10th Cir.1994) (citations omitted). Further questioning and detention are permissible when "(1) during the course of the traffic stop the officer acquires an objectively reasonable and articulable suspicion that the driver is engaged in illegal activity, or (2) the driver voluntarily consents to the officer's additional questioning." *Id.* at 540 (citations omitted). The district court held that the search of the car satisfied both the first and second conditions. Aplt.App. 31. Therefore, Looney's detention of the car was initially permissible under either prong of the test.

■ However, "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). "[T]he investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id.* Furthermore, "[i]t is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." *Id.*

■ After the initial traffic stop was completed, the detention focused primarily on Bejarano's car. Evidently Bejarano had access to his car keys, coat, and cigarettes, and was not closely watched the entire time. Furthermore, until his arrest the next morning he was apparently "not subjected to the coercive atmosphere of a custodial confinement or to the public indignity of being personally detained." *United States v. Place,* 462 U.S. 696, 708, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).

Yet even if Bejarano was "technically still free to continue his travels or carry out other personal activities pending release of" his car, his location and circumstances made it impractical for him to leave. *See id.* (holding that even though a traveler whose luggage is detained may be "technically still free to continue his travels or carry out other personal activities pending release of the luggage, . . . such a seizure can effectively restrain the person.") The fact that Bejarano could not easily leave is evidenced by the fact that an officer had to give him a ride into town. Therefore, he was "effectively restrain[ed]," *id.* at 708, and "the limitations applicable to investigative detentions of the person should define the permissible scope of an investigative detention of [Bejarano's car] on less than probable cause." *Id.* at 709.

The district judge found that

(1) the gas tank appeared to have been altered, (2) one of the tires had new balancing weights and did not match the other three tires on the car, (3) the dashboard appeared to have been altered, and (4) [Bejarano] was traveling from El Paso, a known source city for drugs, to Denver on I–25, a known drug trafficking route.

Aplt.App. 31. The judge therefore concluded that "the facts in this case are sufficient to support reasonable suspicion

of [Bejarano's] involvement in criminal activity." *Id.* In so deciding, the judge implicitly rejected the government's argument that the facts here gave rise to probable cause. *Id.* at 15–18. The court therefore concluded that "[u]nder the circumstances in this case, Officer Looney was justified in briefly detaining the car in order to further investigate the use of a narcotics detecting dog." *Id.* at 32. The district court's determinations of the existence of reasonable suspicion and probable cause are conclusions of law which we review de novo, though we review underlying factual findings for clear error. *Ornelas v. United States,* 517 U.S. 690, 697, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *United States v. Barron–Cabrera,* 119 F.3d 1454, 1457 (10th Cir.1997).

The Supreme Court has declined to adopt a rigid time limit for the kind of stop permitted under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Place,* 462 U.S. at 709–10. The court has found a two-hour restraint reasonable where police prevented a suspect from entering his home unaccompanied while that they obtained a search warrant. *Illinois v. McArthur,* 531 U.S. 326, 332, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001).[1] *See also United States v. Frost,* 999 F.2d 737, 742 (3d Cir.1993) (upholding an 80–minute detention where delay in bringing a drug-sniffing dog to the airport was not due to officers' lack of diligence), *cert. denied,* 510 U.S. 1001, 114 S.Ct. 573, 126 L.Ed.2d 472 (1993). However, in the absence of probable cause, the Court found in *Place* that a 90–minute delay of a suspect's luggage in an airport was unreasonable where the delay was due to the officers' lack of diligence. The Court stated: "... we hold that the detention of respondent's luggage

in this case went beyond *the narrow authority possessed by police to detain briefly luggage reasonably suspected to contain narcotics." Place,* 462 U.S. at 710 (emphasis added).

■ Circumstances under which a suspect is detained are relevant to our determination of whether the stop was "the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time," as *Royer* requires. *Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). *See also Place,* 462 U.S. at 710 (holding that the Fourth Amendment violation was exacerbated by officers' failure to provide information to the suspect regarding the length of time his luggage might be detained, where it was being sent, and how he might get it back). "Moreover, in assessing the effect of the length of the detention, we take into account whether the police diligently pursue their investigation." *Id.* at 709.

■ The district court held that here, "[a]lthough a brief investigatory detention of the car was proper, the nearly hour and a half delay prior to the dog sniff was not justified." Aplt.App. 32. The court took into account the canine unit's delay in getting to the scene, noting that the dog's handler had first completed his work at an accident, then responded to a burglary, and only after that proceeded to the location where Bejarano was stopped. *Id.* On this basis, the court said it could not conclude that "the officers involved in this case diligently pursued the investigation of the car to minimize the intrusion on [Bejarano's] Fourth Amendment interests." *Id.*

---

**1.** Although the officers in *McArthur* had probable cause to believe the suspect had drugs in his house, rather than mere reasonable suspicion, the Court analyzed the reasonableness

of the restraint which flowed from the seizure of the suspect's house under *Terry* and *Place.* *McArthur* at 947–48.

The government challenges the court's finding of insufficient diligence. Brief of Appellant at 23–27. The court had evidence before it that Encinias was working at the accident scene when he was called, and that the burglary was in progress when he was sent to it. Aplt.App. 93, 145. While these obviously serious calls might have required the attention of Encinias, rather than another officer, there was no evidence before the court that this was the case. The government, apparently realizing that it had not met its burden, moved to reopen the evidentiary hearing, which the court denied as noted above.

■ We review the district court's denial of a motion to reopen an evidentiary hearing for abuse of discretion. *United States v. Alderete*, 614 F.2d 726, 727 (10th Cir.1980) ("The trial court has wide discretion in allowing a party to reopen its case after resting."); *United States v. Hobbs*, 31 F.3d 918, 923 (9th Cir.1994) (reviewing for abuse of discretion a district court's denial of a motion to reconsider and reopen an evidentiary hearing). The government knew what the limited issues were for the suppression hearing and simply did not develop its evidence fully for the hearing. We cannot say it was an abuse of discretion not to reopen the hearing.

Taking into account the duration of this detention (84 minutes), its location, the time of night, and the government's failure to demonstrate that it acted diligently, we agree with the district court that the government has not met its "burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." *Royer*, 460 U.S. at 500. On the basis of its findings, the district court held that the detention as carried out by the police was not sufficiently limited in duration and therefore it was not "the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Royer*, 460 U.S. at 500. We accept the trial judge's finding that the 84–minute detention was unreasonable in the circumstances here, particularly in light of the Supreme Court's ruling that the 90–minute detention of the suspect's luggage in *Place* was unreasonable where the delay there was similarly due to the officers' lack of diligence. We therefore cannot say that the district judge's findings were clearly erroneous, that the judge abused his discretion, or that his legal conclusions were in error.

### III

Accordingly, the district court's order granting Bejarano's motion to suppress the evidence is **AFFIRMED**.