# ILLINOIS *v.* McARTHUR

No. 99–1132.   Argued November 1, 2000—Decided February 20, 2001

BREYER, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, SCALIA, KENNEDY, SOUTER, THOMAS, and GINS-BURG, JJ., joined. SOUTER, J., filed a concurring opinion, *post*, p. 337. STEVENS, J., filed a dissenting opinion, *post*, p. 338.

*Joel D. Bertocchi*, Solicitor General of Illinois, argued the cause for petitioner. With him on the briefs were *James E. Ryan*, Attorney General, and *William L. Browers* and *Colleen M. Griffin*, Assistant Attorneys General.

*Matthew D. Roberts* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Waxman, Assistant Attorney General Robinson, Deputy Solicitor General Dreeben*, and *Deborah Watson*.

*Deanne Fortna Jones* argued the cause for respondent. With her on the brief was *Jeff Justice.*\*

JUSTICE BREYER delivered the opinion of the Court.

Police officers, with probable cause to believe that a man had hidden marijuana in his home, prevented that man from entering the home for about two hours while they obtained a search warrant. We must decide whether those officers violated the Fourth Amendment. We conclude that the officers acted reasonably. They did not violate the Amendment's requirements. And we reverse an Illinois court's holding to the contrary.

I

A

On April 2, 1997, Tera McArthur asked two police officers to accompany her to the trailer where she lived with her husband, Charles, so that they could keep the peace while she removed her belongings. The two officers, Assistant Chief John Love and Officer Richard Skidis, arrived with

---

\*A brief of *amici curiae* urging reversal was filed for the State of Ohio et al. by *Betty D. Montgomery*, Attorney General of Ohio, *Edward B. Foley*, State Solicitor, and *Robert C. Maier* and *Matthew D. Miko*, Assistant Solicitors, and by the Attorneys General for their respective States as follows: *Bruce M. Botelho* of Alaska, *Janet Napolitano* of Arizona, *M. Jane Brady* of Delaware, *Alan G. Lance* of Idaho, *Thomas J. Miller* of Iowa, *Andrew Ketterer* of Maine, *J. Joseph Curran, Jr.*, of Maryland, *Mike Hatch* of Minnesota, *Joseph P. Mazurek* of Montana, *Philip McLaughlin* of New Hampshire, *John J. Farmer, Jr.*, of New Jersey, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *W. A. Drew Edmondson* of Oklahoma, *Charles M. Condon* of South Carolina, *Mark Barnett* of South Dakota, *Jan Graham* of Utah, *William H. Sorrell* of Vermont, *Christine O. Gregoire* of Washington, *Thomas F. Reilly* of Massachusetts, *D. Michael Fisher* of Pennsylvania, and *Mark L. Earley* of Virginia.

Briefs of *amici curiae* urging affirmance were filed for the National Association of Criminal Defense Lawyers by *Lisa B. Kemler;* and for the Rutherford Institute by *John W. Whitehead* and *Steven H. Aden*.

Tera at the trailer at about 3:15 p.m. Tera went inside, where Charles was present. The officers remained outside.

When Tera emerged after collecting her possessions, she spoke to Chief Love, who was then on the porch. She suggested he check the trailer because "Chuck had dope in there." App. 15. She added (in Love's words) that she had seen Chuck "slid[e] some dope underneath the couch." *Id.*, at 19.

Love knocked on the trailer door, told Charles what Tera had said, and asked for permission to search the trailer, which Charles denied. Love then sent Officer Skidis with Tera to get a search warrant.

Love told Charles, who by this time was also on the porch, that he could not reenter the trailer unless a police officer accompanied him. Charles subsequently reentered the trailer two or three times (to get cigarettes and to make phone calls), and each time Love stood just inside the door to observe what Charles did.

Officer Skidis obtained the warrant by about 5 p.m. He returned to the trailer and, along with other officers, searched it. The officers found under the sofa a marijuana pipe, a box for marijuana (called a "one-hitter" box), and a small amount of marijuana. They then arrested Charles.

## B

Illinois subsequently charged Charles McArthur with unlawfully possessing drug paraphernalia and marijuana (less than 2.5 grams), both misdemeanors. See Ill. Comp. Stat., ch. 720, §§ 550/4(a), 600/3.5(a) (1998). McArthur moved to suppress the pipe, box, and marijuana on the ground that they were the "fruit" of an unlawful police seizure, namely, the refusal to let him reenter the trailer unaccompanied, which would have permitted him, he said, to "have destroyed the marijuana." App. 27.

The trial court granted McArthur's suppression motion. The Appellate Court of Illinois affirmed, 304 Ill. App. 3d

395, 713 N. E. 2d 93 (1999), and the Illinois Supreme Court denied the State's petition for leave to appeal, 185 Ill. 2d 651, 720 N. E. 2d 1101 (1999). We granted certiorari to determine whether the Fourth Amendment prohibits the kind of temporary seizure at issue here.

## II

### A

The Fourth Amendment says that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U. S. Const., Amdt. 4. Its "central requirement" is one of reasonableness. See *Texas* v. *Brown*, 460 U. S. 730, 739 (1983). In order to enforce that requirement, this Court has interpreted the Amendment as establishing rules and presumptions designed to control conduct of law enforcement officers that may significantly intrude upon privacy interests. Sometimes those rules require warrants. We have said, for example, that in "the ordinary case," seizures of personal property are "unreasonable within the meaning of the Fourth Amendment," without more, "unless . . . accomplished pursuant to a judicial warrant," issued by a neutral magistrate after finding probable cause. *United States* v. *Place*, 462 U. S. 696, 701 (1983).

We nonetheless have made it clear that there are exceptions to the warrant requirement. When faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable. See, *e. g., Pennsylvania* v. *Labron*, 518 U. S. 938, 940–941 (1996) *(per curiam)* (search of automobile supported by probable cause); *Michigan Dept. of State Police* v. *Sitz*, 496 U. S. 444, 455 (1990) (suspicionless stops at drunk driver checkpoint); *United States* v. *Place, supra,* at 706 (temporary seizure of luggage based on reasonable suspicion); *Michigan* v.

*Summers*, 452 U. S. 692, 702–705 (1981) (temporary detention of suspect without arrest warrant to prevent flight and protect officers while executing search warrant); *Terry* v. *Ohio*, 392 U. S. 1, 27 (1968) (temporary stop and limited search for weapons based on reasonable suspicion).

In the circumstances of the case before us, we cannot say that the warrantless seizure was *per se* unreasonable. It involves a plausible claim of specially pressing or urgent law enforcement need, *i. e.*, "exigent circumstances." Cf., *e. g.*, *United States* v. *Place, supra*, at 701 ("[T]he exigencies of the circumstances" may permit temporary seizure without warrant); *Warden, Md. Penitentiary* v. *Hayden*, 387 U. S. 294, 298–299 (1967) (warrantless search for suspect and weapons reasonable where delay posed grave danger); *Schmerber* v. *California*, 384 U. S. 757, 770–771 (1966) (warrantless blood test for alcohol reasonable where delay would have led to loss of evidence). Moreover, the restraint at issue was tailored to that need, being limited in time and scope, cf. *Terry* v. *Ohio, supra*, at 29–30, and avoiding significant intrusion into the home itself, cf. *Payton* v. *New York*, 445 U. S. 573, 585 (1980) ("'[T]he chief evil against which the . . . Fourth Amendment is directed'" is warrantless entry and search of home) (quoting *United States* v. *United States Dist. Court for Eastern Dist. of Mich.*, 407 U. S. 297, 313 (1972)). Consequently, rather than employing a *per se* rule of unreasonableness, we balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable. Cf. *Delaware* v. *Prouse*, 440 U. S. 648, 654 (1979) (determining lawfulness by balancing privacy and law enforcement interests); *United States* v. *Brignoni-Ponce*, 422 U. S. 873, 878 (1975) (same).

We conclude that the restriction at issue was reasonable, and hence lawful, in light of the following circumstances, which we consider in combination. First, the police had probable cause to believe that McArthur's trailer home contained evidence of a crime and contraband, namely, unlawful

drugs. The police had had an opportunity to speak with Tera McArthur and make at least a very rough assessment of her reliability. They knew she had had a firsthand opportunity to observe her husband's behavior, in particular with respect to the drugs at issue. And they thought, with good reason, that her report to them reflected that opportunity. Cf. *Massachusetts* v. *Upton*, 466 U. S. 727, 732–734 (1984) *(per curiam)* (upholding search warrant issued in similar circumstances).

Second, the police had good reason to fear that, unless restrained, McArthur would destroy the drugs before they could return with a warrant. They reasonably might have thought that McArthur realized that his wife knew about his marijuana stash; observed that she was angry or frightened enough to ask the police to accompany her; saw that after leaving the trailer she had spoken with the police; and noticed that she had walked off with one policeman while leaving the other outside to observe the trailer. They reasonably could have concluded that McArthur, consequently suspecting an imminent search, would, if given the chance, get rid of the drugs fast.

Third, the police made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy. They neither searched the trailer nor arrested McArthur before obtaining a warrant. Rather, they imposed a significantly less restrictive restraint, preventing McArthur only from entering the trailer unaccompanied. They left his home and his belongings intact—until a neutral Magistrate, finding probable cause, issued a warrant.

Fourth, the police imposed the restraint for a limited period of time, namely, two hours. Cf. *Terry* v. *Ohio, supra,* at 28 (manner in which police act is "vital . . . part of . . . inquiry"). As far as the record reveals, this time period was no longer than reasonably necessary for the police, acting with diligence, to obtain the warrant. Compare *United*

*States* v. *Place*, 462 U. S., at 709–710 (holding 90-minute detention of luggage unreasonable based on nature of interference with person's travels and lack of diligence of police), with *United States* v. *Van Leeuwen*, 397 U. S. 249, 253 (1970) (holding 29-hour detention of mailed package reasonable given unavoidable delay in obtaining warrant and minimal nature of intrusion). Given the nature of the intrusion and the law enforcement interest at stake, this brief seizure of the premises was permissible.

## B

Our conclusion that the restriction was lawful finds significant support in this Court's case law. In *Segura* v. *United States*, 468 U. S. 796 (1984), the Court considered the admissibility of drugs which the police had found in a lawful, warrant-based search of an apartment, but only after unlawfully entering the apartment and occupying it for 19 hours. The majority held that the drugs were admissible because, had the police acted lawfully throughout, they could have discovered and seized the drugs pursuant to the validly issued warrant. See *id.*, at 799, 814–815 (citing *Silverthorne Lumber Co.* v. *United States*, 251 U. S. 385 (1920)). The minority disagreed. However, when describing alternative lawful search and seizure methods, both majority and minority assumed, at least for argument's sake, that the police, armed with reliable information that the apartment contained drugs, might lawfully have sealed the apartment from the outside, restricting entry into the apartment while waiting for the warrant. Compare *Segura* v. *United States*, 468 U. S., at 814 ("Had police never entered the apartment, but instead conducted a perimeter stakeout to prevent anyone from entering . . . and destroying evidence, the contraband . . . would have been . . . seized precisely as it was here"), with *id.*, at 824, n. 15 (STEVENS, J., dissenting) ("I assume impoundment would be permissible

even absent exigent circumstances when it occurs 'from the outside'—when the authorities merely seal off premises pending the issuance of a warrant but do not enter"); see also *Mincey* v. *Arizona*, 437 U. S. 385, 394 (1978) (exigent circumstances do not justify search where police guard at door could prevent loss of evidence); *United States* v. *Jeffers*, 342 U. S. 48, 52 (1951) (same).

In various other circumstances, this Court has upheld temporary restraints where needed to preserve evidence until police could obtain a warrant. See, *e. g., United States* v. *Place, supra,* at 706 (reasonable suspicion justifies brief detention of luggage pending further investigation); *United States* v. *Van Leeuwen, supra,* at 253 (reasonable suspicion justifies detaining package delivered for mailing). Cf. *Richards* v. *Wisconsin*, 520 U. S. 385, 395 (1997) (no need to "knock and announce" when executing a search warrant where officers reasonably suspect that evidence might be destroyed); *Carroll* v. *United States*, 267 U. S. 132, 153 (1925) (warrantless search of automobile constitutionally permissible).

We have found no case in which this Court has held unlawful a temporary seizure that was supported by probable cause and was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable period of time. But cf. *Welsh* v. *Wisconsin*, 466 U. S. 740, 754 (1984) (holding warrantless entry into and arrest in home unreasonable despite possibility that evidence of noncriminal offense would be lost while warrant was being obtained).

C

Nor are we persuaded by the countervailing considerations that the parties or lower courts have raised. McArthur argues that the police proceeded without probable cause. But McArthur has waived this argument. See 304 Ill. App. 3d, at 397, 713 N. E. 2d, at 95 (stating that McArthur

does not contest existence of probable cause); Brief in Opposition 7 (acknowledging probable cause). And, in any event, it is without merit. See *supra*, at 331–332.

The Appellate Court of Illinois concluded that the police could not order McArthur to stay outside his home because McArthur's porch, where he stood at the time, was part of his home; hence the order "amounted to a constructive eviction" of McArthur from his residence. 304 Ill. App. 3d, at 402, 713 N. E. 2d, at 98. This Court has held, however, that a person standing in the doorway of a house is "in a 'public' place," and hence subject to arrest without a warrant permitting entry of the home. *United States* v. *Santana*, 427 U. S. 38, 42 (1976). Regardless, we do not believe the difference to which the Appellate Court points—porch versus, *e. g.*, front walk—could make a significant difference here as to the reasonableness of the police restraint; and that, from the Fourth Amendment's perspective, is what matters.

The Appellate Court also found negatively significant the fact that Chief Love, with McArthur's consent, stepped inside the trailer's doorway to observe McArthur when McArthur reentered the trailer on two or three occasions. 304 Ill. App. 3d, at 402–403, 713 N. E. 2d, at 98. McArthur, however, reentered simply for his own convenience, to make phone calls and to obtain cigarettes. Under these circumstances, the reasonableness of the greater restriction (preventing reentry) implies the reasonableness of the lesser (permitting reentry conditioned on observation).

Finally, McArthur points to a case (and we believe it is the only case) that he believes offers direct support, namely, *Welsh* v. *Wisconsin, supra.* In *Welsh,* this Court held that police could not enter a home without a warrant in order to prevent the loss of evidence (namely, the defendant's blood alcohol level) of the "nonjailable traffic offense" of driving while intoxicated. 466 U. S., at 742, 754. McArthur notes

that his two convictions are for misdemeanors, which, he says, are as minor, and he adds that the restraint, keeping him out of his home, was nearly as serious.

We nonetheless find significant distinctions. The evidence at issue here was of crimes that were "jailable," not "nonjailable." See Ill. Comp. Stat., ch. 720, § 550/4(a) (1998); ch. 730, § 5/5–8–3(3) (possession of less than 2.5 grams of marijuana punishable by up to 30 days in jail); ch. 720, § 600/ 3.5; ch. 730, § 5/5–8–3(1) (possession of drug paraphernalia punishable by up to one year in jail). In *Welsh,* we noted that, "[g]iven that the classification of state crimes differs widely among the States, the penalty that may attach to any particular offense seems to provide the clearest and most consistent indication of the State's interest in arresting individuals suspected of committing that offense." 466 U. S., at 754, n. 14. The same reasoning applies here, where class C misdemeanors include such widely diverse offenses as drag racing, drinking alcohol in a railroad car or on a railroad platform, bribery by a candidate for public office, and assault. See, *e. g.,* Ill. Comp. Stat., ch. 65, § 5/4–8–2 (1998); ch. 610, § 90/1; ch. 625, § 5/11–504; ch. 720, § 5/12–1.

And the restriction at issue here is less serious. Temporarily keeping a person from entering his home, a consequence whenever police stop a person on the street, is considerably less intrusive than police entry into the home itself in order to make a warrantless arrest or conduct a search. Cf. *Payton* v. *New York,* 445 U. S., at 585 (the Fourth Amendment's central concern is the warrantless entry and search of the home).

We have explained above why we believe that the need to preserve evidence of a "jailable" offense was sufficiently urgent or pressing to justify the restriction upon entry that the police imposed. We need not decide whether the circumstances before us would have justified a greater restriction for this type of offense or the same restriction were only a "nonjailable" offense at issue.

 

## III

In sum, the police officers in this case had probable cause to believe that a home contained contraband, which was evidence of a crime. They reasonably believed that the home's resident, if left free of any restraint, would destroy that evidence. And they imposed a restraint that was both limited and tailored reasonably to secure law enforcement needs while protecting privacy interests. In our view, the restraint met the Fourth Amendment's demands.

The judgment of the Illinois Appellate Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE SOUTER, concurring.

I join the Court's opinion subject to this afterword on two points: the constitutionality of a greater intrusion than the one here and the permissibility of choosing impoundment over immediate search. Respondent McArthur's location made the difference between the exigency that justified temporarily barring him from his own dwelling and circumstances that would have supported a greater interference with his privacy and property. As long as he was inside his trailer, the police had probable cause to believe that he had illegal drugs stashed as his wife had reported and that with any sense he would flush them down the drain before the police could get a warrant to enter and search. This probability of destruction in anticipation of a warrant exemplifies the kind of present risk that undergirds the accepted exigent circumstances exception to the general warrant requirement. *Schmerber* v. *California,* 384 U. S. 757, 770–771 (1966). That risk would have justified the police in entering McArthur's trailer promptly to make a lawful, warrantless search. *United States* v. *Santana,* 427 U. S. 38, 42–43 (1976); *Warden, Md. Penitentiary* v. *Hayden,* 387 U. S. 294, 298–299 (1967). When McArthur stepped

outside and left the trailer uninhabited, the risk abated and so did the reasonableness of entry by the police for as long as he was outside. This is so because the only justification claimed for warrantless action here is the immediate risk, and the limit of reasonable response by the police is set by the scope of the risk. See *Terry* v. *Ohio*, 392 U. S. 1, 25–26 (1968).

Since, however, McArthur wished to go back in, why was it reasonable to keep him out when the police could perfectly well have let him do as he chose, and then enjoyed the ensuing opportunity to follow him and make a warrantless search justified by the renewed danger of destruction? The answer is not that the law officiously insists on safeguarding a suspect's privacy from search, in preference to respecting the suspect's liberty to enter his own dwelling. Instead, the legitimacy of the decision to impound the dwelling follows from the law's strong preference for warrants, which underlies the rule that a search with a warrant has a stronger claim to justification on later, judicial review than a search without one. See *United States* v. *Ventresca*, 380 U. S. 102, 106 (1965); see also 5 W. LaFave, Search and Seizure § 11.2(b), p. 38 (3d ed. 1996) ("[M]ost states follow the rule which is utilized in the federal courts: if the search or seizure was pursuant to a warrant, the defendant has the burden of proof; but if the police acted without a warrant the burden of proof is on the prosecution"). The law can hardly raise incentives to obtain a warrant without giving the police a fair chance to take their probable cause to a magistrate and get one.

JUSTICE STEVENS, dissenting.

The Illinois General Assembly has decided that the possession of less than 2.5 grams of marijuana is a class C misdemeanor. See Ill. Comp. Stat., ch. 720, § 550/4(a) (1998). In so classifying the offense, the legislature made a concerted policy judgment that the possession of small amounts of

marijuana for personal use does not constitute a particularly significant public policy concern. While it is true that this offense—like feeding livestock on a public highway or offering a movie for rent without clearly displaying its rating[1]— may warrant a jail sentence of up to 30 days, the detection and prosecution of possessors of small quantities of this substance is by no means a law enforcement priority in the State of Illinois.[2]

Because the governmental interest implicated by the particular criminal prohibition at issue in this case is so slight, this is a poor vehicle for probing the boundaries of the government's power to limit an individual's possessory interest in his or her home pending the arrival of a search warrant. Cf. *Segura* v. *United States*, 468 U. S. 796 (1984) (seven Justices decline to address this issue because case does not require its resolution). Given my preference, I would, therefore, dismiss the writ of certiorari as improvidently granted.

Compelled by the vote of my colleagues to reach the merits, I would affirm. As the majority explains, the essential inquiry in this case involves a balancing of the "privacy-

---

[1] See Ill. Comp. Stat., ch. 605, § 5/9–124.1 (1998) (making feeding livestock on a public highway a class C misdemeanor); ch. 720, §§ 395/3–395/4 (making it a class C misdemeanor to sell or rent a video that does not display the official rating of the motion picture from which it is copied). Other examples of offenses classified as class C misdemeanors in Illinois include camping on the side of a public highway, ch. 605, § 5/9–124, interfering with the "lawful taking of wild animals," ch. 720, § 125/2, and tattooing the body of a person under 21 years of age, ch. 720, § 5/12–10.

[2] Nor in many other States. Under the laws of many other States, the maximum penalty McArthur would have faced for possession of 2.3 grams of marijuana would have been less than what he faced in Illinois. See, e. g., Cal. Health & Safety Code Ann. § 11357(b) (West 1991) ($100 fine); Colo. Rev. Stat. § 18–18–406(1) (1999) ($100 fine); Minn. Stat. § 152.027(4) (2000) ($200 fine and drug education); Miss. Code Ann. § 41–29–139(c)(2)(A) (Supp. 1999) ($100–$250 fine); Neb. Rev. Stat. § 28–416(13) (1995) ($100 fine and drug education); N. M. Stat. Ann. § 30–31–23(B) (1997) ($50–$100 fine and 15 days in jail); N. Y. Penal Law § 221.05 (McKinney 2000) ($100 fine); Ore. Rev. Stat. § 475.992(4)(f) (Supp. 1998) ($100 fine).

related and law enforcement-related concerns to determine if the intrusion was reasonable." *Ante*, at 331. Under the specific facts of this case, I believe the majority gets the balance wrong. Each of the Illinois jurists who participated in the decision of this case placed a higher value on the sanctity of the ordinary citizen's home than on the prosecution of this petty offense. They correctly viewed that interest—whether the home be a humble cottage, a secondhand trailer, or a stately mansion—as one meriting the most serious constitutional protection.[3] Following their analysis and the reasoning in our decision in *Welsh* v. *Wisconsin*, 466 U. S. 740 (1984) (holding that some offenses may be so minor as to make it unreasonable for police to undertake searches that would be constitutionally permissible if graver offenses were suspected), I would affirm.

---

[3] Principled respect for the sanctity of the home has long animated this Court's Fourth Amendment jurisprudence. See, *e. g.*, *Wilson* v. *Layne*, 526 U. S. 603, 610 (1999) ("The Fourth Amendment embodies this centuries-old principle of respect for the privacy of the home"); *Payton* v. *New York*, 445 U. S. 573, 601 (1980) (emphasizing "the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic"); *Mincey* v. *Arizona*, 437 U. S. 385, 393 (1978) ("[T]he Fourth Amendment reflects the view of those who wrote the Bill of Rights that the privacy of a person's home and property may not be totally sacrificed in the name of maximum simplicity in enforcement of the criminal law").