[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 2, 2008
THOMAS K. KAHN
CLERK

No. 07-12942
Non-Argument Calendar
_____

D. C. Docket No. 05-00022-CR-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GREGORY SCOTT LEGETTE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(January 2, 2008)**

Before HULL, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Gregory Scott Legette appeals his convictions for possession with intent to

distribute five grams or more of methamphetamine, in violation of 21 U.S.C. § 841, and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). Legette's appeal is based on the denial of his motion to suppress evidence found in his home.

## I. Background

Upon executing a search warrant at the home of Debbie Cook, police officers of Lauren County, Georgia determined that Cook would be helpful in gaining information on other drug activity involving Gregory Legette. The officers arranged for Cook to make a controlled purchase of methamphetamines from Legette. The officers followed Cook to Legette's house, Cook made the purchase, and then the officers met Cook at another location. Cook informed the officers that Legette was preparing to leave his residence. The officers became concerned that Cook had warned Legette of their presence and that he might flee or destroy evidence. They, therefore, selected one of the officers, Officer Stokes, to approach Legette at his home.

According to the officers, Officer Stokes knocked on the door, Legette answered the door, and let them into the house voluntarily. Legette, however, testified that he did not grant the officers entry into the house. Instead, Legette said that he stepped out onto the porch to speak with Stokes, and when Legette

2

attempted to re-enter his house alone, Stokes and another officer barged in behind him. Legette testified that he specifically told the officers they could not come into the house.

Once inside the house, the officers asked if they could search the house, to which Legette responded, "not without a warrant." The officers testified that Legette then got "extremely nervous," became "highly agitated," and began "pacing in the house and going toward the bathroom door and the bedroom door." This made the officers wary that others might be present in the house, and one officer made a sweep of the house to verify that no one else was in the home. The officers testified that this was a cursory "protective sweep." Legette testified to the contrary that it was an in-depth search, and that he heard the officer "rummaging" around. During this sweep, the officer saw a drug pipe with what appeared to be drug residue on it lying on a dresser.

At that point, one officer left to obtain a search warrant and another stayed behind with Legette to ensure that Legette did not flee nor destroy evidence. While the officer was getting the warrant, Legette put his head down on the kitchen table and fell asleep for an hour and a half to two hours. The affidavit supporting the search warrant did not mention the pipe seen during the protective sweep. The warrant was based on the drug purchase made by Cook.

3

To get the warrant, Sergeant Brewer drove back to the Sheriff's office to draft the affidavit and warrant. He then drove to the home of a magistrate judge and back to the station to make copies of the warrant documents. After obtaining the warrant, the officer radioed back that a warrant had been procured. The subsequent search uncovered methamphetamines and firearms.

Legette filed a motion to suppress the evidence found at his house on three grounds. Legette claimed his constitutional rights were violated because (1) the officers had illegally entered his home without his consent, (2) the protective sweep of the house was actually an unreasonable, warrantless search, and (3) he was unreasonably detained while waiting for the search warrant. The district judge assumed without deciding that Legette was credible regarding the length of time the officers were at his house, but found that the officers were more credible as to whether consent had been given to enter the house and whether a cursory sweep or a full search was done before the warrant was obtained. The court held that, on the facts it found, Legette had consented to the entry, the walk through the house was a lawful protective sweep, and that even if the officers had been at the home for the three and a half to four hours alleged by Legette, that time period was not unreasonable. The court, therefore, denied the motion to suppress.

Legette then pleaded guilty to two counts of the indictment: possession with

4

intent to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. § 841, and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). Legette reserved his right to appeal he denial of the motion to suppress.

## II. Standard of Review

A district court's ruling on a motion to suppress presents mixed questions of law and fact. United States v. Santa, 236 F.3d 662, 668 (11th Cir. 2000). We accept the district court's factual findings as true unless they are clearly erroneous, but the court's application of the law to those facts is reviewed de novo. United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002).

## III. Discussion

*Entry into Defendant's Home*

After hearing testimony from Legette and several officers as to whether permission had been given to enter Legette's home, the court found the officers more credible than Legette and determined that Legette had given his consent for the officers to enter his house. Legette has offered nothing beyond his own testimony, which the court found incredible, to refute the court's finding. The district court is in a better position to judge the credibility of witnesses before it, and we will not disturb the court's findings of fact unless its understanding of those

5

facts appears "unbelievable."  Ramirez-Chilel, 289 F.3d at 749.  The record amply supports the district court's reasonable finding and we, therefore, affirm the district court's ruling that the entry into Legette's home was lawful.

*Protective Search*

Defendant asserts that he denied the officers permission to search his home. The officers agree but claim they performed a "protective sweep" to confirm that no other person was in the house who might pose a danger.  Defendant claims that Officer Stokes went beyond the scope of a protective sweep, transforming it into an unlawful, warrantless search.

Generally under the law of the Fourth Amendment, a search of the house or office is not reasonable without a warrant issued on probable cause.  Maryland v. Buie, 494 U.S. 325, 331 (1990).  The Supreme Court found in Buie, however, that a protective sweep may be undertaken lawfully pursuant to an in-house arrest where the officer "possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene."  Id. at 337.  Most courts reviewing this issue have expanded Buie beyond in-home arrests pursuant to a warrant to all situations wherein officers are lawfully present in a home.  See United States v. Miller, 430 F.3d 93, 99 (2d Cir. 2005) (agreeing with the First, Seventh, Fifth, Sixth, one panel of the Ninth, and

6

the D.C. circuits that protective searches may be undertaken even without an arrest warrant); but see U.S. v. Torres-Castro, 470 F.3d 992, 997 (10th Cir. 2006) (noting that itself, the Eighth circuit, and one panel of the Ninth circuit were the only circuits to limit Buie to situations where an arrest warrant is being executed).

Here, the circumstances fall within the exception set forth in Buie. The officers were lawfully inside the house, and observed Legette become agitated and begin looking toward and moving toward the bedroom and bathroom upon being asked for permission to search the house. The officers were concerned that these movements indicated that another individual might be hiding in the house. Also, the record does not suggest that the sweep was anything other than a protective sweep. The court in this case found that the officers's testimony was credible that the sweep had been no more than a brief look around the house. As stated earlier, we will not disturb such reasonable factual findings of the district court.

Additionally, even if we assumed that the protective sweep was based on insufficient belief that a dangerous individual might be in the home, the motion to suppress was still properly denied. The officer did not immediately seize any evidence observed during the sweep, nor mention any such evidence in his request for a search warrant. The search warrant was based solely on the officer's testimony of the controlled purchase by the informant. All evidence collected and

used against Legette was, therefore, obtained through the lawful execution of a valid search warrant based on probable cause. See e.g., United States v. Bailey, 691 F.2d 1009, 1013 (11th Cir. 1982) ("The government may defeat a motion to suppress by demonstrating a break in the causal chain [between the illegal search and lawful procurement of evidence].")

*Detention While Officers Obtained Warrant*

Legette and the officers dispute the length of time that passed from when the officers arrived at Legette's house until the officers obtained a warrant. The officers testified that they arrived around 5:30 pm, whereas Legette and his mother claim they arrived at 3:30. Because the warrant did not issue until 6:15 or 6:45, the different testimonies create a dispute as to whether the officers detained Legette without a warrant for one hour or three. Instead of resolving this dispute, the court found that, even if Legette had been detained for more than three hours, it was not unreasonable because the officers were diligently pursuing a warrant.

The Fourth Amendment protects the right of individuals to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. The central requirement is one of reasonableness. Illinois v. McArthur, 531 U.S. 326, 330 (2001).

Legette contends that his detention was unreasonable for two reasons.

8

Legette argues that it was unreasonable for the officers to approach him at his home without first obtaining a warrant. Legette also argues that the time he was detained in his home while a warrant was procured was unreasonable.

The officers were justified in approaching Legette without a warrant because Cook reported that Legette was "getting ready to leave." They were also concerned that Cook had warned him that they were there and that Legette might therefore destroy evidence. Additionally, the time from when the officers entered the house until Sergeant Brewer left to obtain a warrant was not long nor unjustified. Legette does not dispute that any more time passed than the time needed to request permission to search the residence and to conduct a protective sweep when permission was denied. After Sergeant Brewer left, he acted diligently in pursuing the warrant with no unreasonable delays.

Legette's detention was not per se unreasonable under the law of the Fourth Amendment because the officers had a plausible claim of exigent circumstances. See McArthur, 531 U.S. at 331. Where not per se unreasonable, courts should balance the privacy and law-enforcement concerns to determine if the seizure of the Defendant was reasonable. Id.

The Court in McArthur found a two-hour detention of a man outside his home reasonable. Id. In that case, the police detained a man outside his trailer for

two hours while obtaining a warrant after his wife told officers on the scene that he had "dope" in the trailer.  Id. at 332.  The Court found this detention to be reasonable based on four criteria.  Id.  First, the officers had probable cause to believe the trailer had evidence of unlawful drugs.  Id.  Second, the police had good reason to believe that the man would destroy the drugs if not detained because the man had seen his wife talk to and then walk off with police officers after leaving the trailer.  Id. Third, the police "made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy" by not searching the trailer nor arresting the man until the warrant was issued.  Id.  Fourth, the restraint lasted for a limited time.  Id.

In this case, the same criteria establish that Legette's detention was reasonable.  The officers had probable cause to believe that Legette had committed a crime and that evidence would be found in his home based on the controlled purchase of drugs and information provided by Cook.  The police believed that the evidence might be destroyed and that Legette might escape capture because Cook had said he would be leaving soon and they were concerned that she had warned Legette of their presence.  The police here respected Legette's privacy needs by not arresting him nor fully searching the premises without a warrant.  Also, Legette cannot have been too agitated by the detention, as his own testimony reveals that

10

he fell asleep while waiting for the warrant. Finally, as in <u>McArthur</u>, the restraint in this case was limited in time—lasting at most nearly four hours. Although in <u>McArthur</u> the detention occurred outside the home and here Legette was detained inside his home, this distinction is not dispositive where the defendant granted permission to the officers to enter his home.

*Burden of Proof*

In his Statement of the Issues, Legette alludes to an argument that the burden of proof should have shifted to the government at some point. Legette failed to address this argument anywhere else in his brief, and the issue, therefore, has been waived. <u>Greenbriar, Ltd. v. City of Alabaster</u>, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (holding that arguments raised in statement of the case and not argued anywhere else in the brief are waived).

### IV. Conclusion

For the foregoing reasons, the denial of the motion to suppress and Legette's subsequent conviction are **AFFIRMED**.