**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1881
_____

OLIVER LAWAL; DAOSAMID BOUNTHISANE; GAZALI SHITTU,
Appellants

v.

MARK MCDONALD; WILLIAM RILEY; FREDERICK R. CHOW
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-12-cv-03599)
District Judge: Hon. C. Darnell Jones, II
_____

Argued:  November 13, 2013

Before:  HARDIMAN, SHWARTZ and SCIRICA, Circuit Judges.

(Filed: February 26, 2014)

Jim R. Ogorzalek [ARGUED]
William & Mary Law School
Appellate and Supreme Court Clinic
P.O. Box 8795
Williamsburg, VA 23187

Tillman J. Breckenridge, Esq.
Tara A. Brennan, Esq.
Reed Smith LLP
1301 K Street, N.W.
Washington, DC 20005

    Counsel for Appellants

Viveca D. Parker, Esq. [ARGUED]
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

　　　　Counsel for Appellees

_____

OPINION
_____

SHWARTZ, Circuit Judge.

Oliver Lawal, Daosamid Bouthisane, and Gazali Shittu (collectively, "Plaintiffs")

appeal the dismissal of their Amended Complaint alleging that Special Agents of the

Bureau of Immigration and Customs Enforcement ("ICE") Mark McDonald, William

Riley, and Frederick R. Chow (collectively, "Defendants") violated their Fourth and Fifth

Amendment rights.  For the reasons set forth below, we will affirm in part, vacate in part,

and remand.

I.[1]

According to the Amended Complaint, Plaintiffs are United States citizens who are licensed to drive

taxicabs in Philadelphia.  In June 2009, Defendant McDonald requested and thereafter received a list of all drivers

certified to drive taxis in Philadelphia from the Philadelphia Parking Authority's Taxicab and Limousine Division

("PPA").  Over the next year, the PPA and ICE, including Defendants, exchanged versions of the list of drivers in an

effort to create a list that identified illegal aliens certified to operate taxis in Philadelphia.  Once the list was

---

[1] The District Court had jurisdiction in this case pursuant to 28 U.S.C. § 1331, and we have jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review of a district court's order dismissing a complaint.  Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011).  We "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).  The facts recounted here are drawn from the Amended Complaint.

finalized, those on it, including Plaintiffs, were sent letters advising them that their accounts were purportedly audited, they were entitled to a refund, and they were invited to the PPA facility on June 30, 2010 to collect it.

When they arrived at the PPA facility, each Plaintiff provided his driver's license, taxicab ID, name, date of birth, address, and Social Security number to an unidentified female ICE agent, and was instructed to enter another room to receive his refund. Upon entering the other room, Defendants and other ICE agents under Defendants' direction or control "suddenly and violently attacked," threw against a wall, and handcuffed each Plaintiff, informed each Plaintiff that he was "being arrested for an alleged immigration violation," and interrogated each Plaintiff for more than one hour. App. 47-48, 52, 56-57. Each Plaintiff informed the ICE agents that he was a United States citizen.

Thereafter, each Plaintiff was told he had been mistakenly detained, but nonetheless was held for several additional hours with other detained taxi drivers, and was forbidden to stand or speak. Defendants advised Plaintiffs that they were not permitted to leave because Defendants did not want them to have an opportunity to advise other taxicab drivers of the ICE operation occurring at the PPA facility that day. There were approximately four uniformed ICE agents and ten plainclothes ICE agents in the room with the detained drivers, many of them had guns strapped to their waists, and several ICE agents were standing by the exit.

Plaintiffs filed a Complaint asserting Bivens[2] claims for violations of the Fourth and Fifth Amendments. Defendants filed a motion to dismiss, or in the alternative, for summary judgment, and attached declarations from each Defendant that purported to describe their role, or lack thereof, in the events alleged in the Complaint. In lieu of responding to the motion, and as permitted under Fed. R. Civ. P. 15(a)(1), Plaintiffs filed an Amended Complaint. Despite having an opportunity to include information from Defendants' declarations, no information from the declarations was included in the Amended Complaint.

Like the initial Complaint, the Amended Complaint asserted Bivens claims alleging that Defendants' gross negligence and deliberate indifference violated Plaintiffs' Fourth Amendment rights to be free from unreasonable seizure of their persons by: (1) failing to ensure that no United States citizen was on the list; (2) arresting Plaintiffs without probable cause; and (3) failing to release Plaintiffs once they learned they were U.S. citizens. Plaintiffs did not allege claims based upon alleged excessive force or racial or ethnic profiling.

---

[2] In Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court "recognized . . . an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (internal quotation marks omitted).

3

The District Court granted Defendants' renewed motion to dismiss[3] the Amended Complaint with prejudice, finding that Plaintiffs' Fourth and Fifth[4] Amendment claims failed to state plausible claims for relief, and regardless, Defendants were entitled to qualified immunity. This appeal followed.

## II.

Plaintiffs appeal the rulings that: (1) they failed to plausibly plead that each defendant personally participated in each of the alleged wrongful acts, and (2) Defendants, as federal officers, were entitled to qualified immunity.

To survive a motion to dismiss under Rule 12(b)(6), the pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). This pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "'naked assertions' devoid of 'further factual enhancement'" are insufficient. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

---

[3] The District Court "construed [the motion] solely as one filed pursuant to Fed. R. Civ. P. 12(b)(6)," App. 4, even though the Defendants alternatively sought summary judgment.

[4] Plaintiffs do not address the dismissal of their Fifth Amendment claims on appeal and thus these claims are deemed abandoned. Like the District Court, however, we will "assume that the entire factual basis for the Fifth Amendment claims already appear[s] in [the Fourth Amendment claims]." App. 9 n.5.

4

To state a claim for unlawful seizure under the Fourth Amendment, a plaintiff must show that a "seizure" occurred and that it was unreasonable. United States v. Smith, 575 F.3d 308, 313 (3d Cir. 2009). To be personally liable under Bivens, a defendant cannot merely be liable under the theory of respondeat superior, but rather "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Thus, for the Amended Complaint to be sufficient, Plaintiffs must plead facts plausibly demonstrating an unreasonable seizure occurred and that either: (a) Defendants directly participated in unreasonably seizing Plaintiffs; (b) Defendants directed others to unreasonably seize Plaintiffs; or (c) Defendants were the people in charge during the operation and they had knowledge of and acquiesced in Plaintiffs' unreasonable seizure by their subordinates.[5] See Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010).

Excluding Plaintiffs' allegations that are so conclusory that they are not entitled to the assumption of truth,[6] Iqbal, 556 U.S. at 680-81, we examine the Amended Complaint to determine whether its factual content allows the Court to draw the reasonable inference that Defendants are liable for the misconduct alleged. Id. at 678 (citing Twombly, 550

---

[5] Because the issue at hand is the sufficiency of the pleading, we need not decide whether Iqbal voids this theory of liability to resolve this appeal. See Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 70 (3d Cir. 2011); Santiago, 629 F.3d at 130-31 n.8 (noting that "[n]umerous courts, including this one, have expressed uncertainty as to the viability and scope of supervisory liability after Iqbal.").

[6] Throughout the Amended Complaint, Plaintiffs allege that Defendants violated the Fourth Amendment by "unjustifiably includ[ing] Plaintiffs on the list," App. 46, being "reckless, grossly negligent, and act[ing] with deliberate indifference," App. 49-50, 54, 59, acting in a way that was "not reasonable, appropriate or lawful," App. 50, 54. 60, and engaging in actions that "clearly violated Fourth Amendment rights of . . . which a reasonable person would have known." App. 50, 55, 60. Such "boilerplate allegations mimicking the purported legal standards for liability," Argueta, 643 F.3d at 74, are not assumed to be true.

5

U.S. at 556). To evaluate the plausibility of the claims in this case, we separate the allegations into the three separate acts that Plaintiffs claim violate the Fourth Amendment: (1) the creation of the list and its use to lure Plaintiffs to the PPA facility; (2) Plaintiffs' treatment upon arrival and before their citizenship status was confirmed; and (3) Plaintiffs' detention at the PPA facility after their U.S. citizenship was confirmed.

As to Plaintiffs' claim that the Fourth Amendment was violated by the creation and use of the list to lure Plaintiffs to the facility, Defendants assert that the operation was conducted in accordance with 8 U.S.C. § 1357(a)(1), which provides that "[a]ny officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant . . . to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States." Because the Fourth Amendment limits an agent's authority under Section 1357(a)(1), agents are allowed to detain and interrogate someone under this statute as long as they have a reasonable suspicion that such person is here illegally. United States v. Brignoni-Ponce, 422 U.S. 873, 884 (1975).

To determine whether an officer had reasonable suspicion, we must consider, based upon the "totality of the circumstances," "whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2001) (citation omitted). The officer cannot pick someone out of a crowd at random or solely on the basis of nationality and question them without some objective reason. See Brignoni-Ponce, 422 U.S. at 883; Orhorhaghe v. INS, 38 F.3d 488, 497 (9th Cir. 1994). Once, however, the officer has objective facts that give

6

him or her cause to doubt the person's immigration status, such as record checks, tips, the individual's actions, facts from the broader context in which events are transpiring, or an officer's expertise in travel and immigration patterns, the officer has reasonable suspicion and can detain and question the individual about his or her immigration status under Section 1357(a)(1). See, e.g., United States v. Cortez, 449 U.S. 411, 418 (1981); Babula v. INS, 665 F.2d 293, 296 (3d Cir. 1981); Lee v. INS, 590 F.2d 497, 502 (3d Cir. 1979).

Here, Plaintiffs state that they were "unjustifiably" included on a list of individuals who were illegally in the United States. App. 46. This is a legal conclusion that is not entitled to the assumption of truth. The remaining allegations concerning the preparation and contents of the list are presumed true and demonstrate that reasonable suspicion existed to detain and question those who were on it. Plaintiffs allege that in June 2009, Defendant McDonald contacted the PPA to request a list of all taxi drivers certified to operate a taxi cab in Philadelphia. The request was broad and had no bias that could in any way suggest law enforcement was targeting individuals based upon race or ethnicity. Indeed, Plaintiffs do not allege that the list targeted any specific ethnic group. Plaintiffs allege that, over the next year, the PPA and ICE exchanged various versions of the list to identify only illegal aliens or immigrants certified to operate taxi cabs in Philadelphia. Those on the final list were invited to the PPA facility under a ruse, and upon arrival, were told that they were under arrest for suspected immigration law violations.

Taken together, the reasonable inference from the allegations is that Defendants, who are ICE agents, spent one year reviewing information concerning the immigration status of the many taxi cab drivers whose names appeared on the PPA's list of individuals

7

certified to drive taxis in the large city of Philadelphia, so as to winnow it down to only those for whom no record of lawful status was found and then to include those individuals in the planned operation at the PPA facility to ascertain their immigration status. Plaintiffs have failed to allege facts amounting to a plausible claim that it was constitutionally unreasonable to identify such individuals and include them in the operation at the PPA facility to determine their immigration status. As such, the District Court correctly dismissed claims based upon the creation of the list and the operation that led Plaintiffs to appear at the PPA facility for questioning.

We now turn to the sufficiency of the pleading concerning the events that occurred after Plaintiffs arrived at the PPA facility. Plaintiffs allege that upon arrival they presented their identification and were directed to another room in which they were thrown against a wall, handcuffed, told they were under arrest, and interrogated for more than one hour. Assuming that these facts demonstrate Plaintiffs were arrested, we must examine the pleadings and reasonable inferences that can be drawn from them to determine if the arrest was lawful. Immigration officers have authority to arrest without a warrant "any alien . . . if he has reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); see also Babula, 665 F.2d at 298. Based upon the totality of the circumstances alleged, a reasonable officer would believe that he could rely on the process that produced the list of suspected illegal alien drivers, and Plaintiffs' inclusion on it, as credible information that Plaintiffs were illegal aliens who violated the immigration laws. And in an operation of this kind—a sweep

8

involving a large number of suspected illegal aliens summoned under a ruse—the officers had a reasonable basis in such a developing situation for concluding that suspects were likely to flee before a warrant could issue unless they were restrained in some fashion. See Barbula 665 F.3d at 298; Davila v. N. Reg'l Joint Police Bd., No. 2:13-CV-00070, 2013 WL 5724939, at *15 (W.D. Pa. Oct. 21, 2013). Accordingly, a reasonable officer would believe that he had the authority to arrest Plaintiffs pursuant to Section 1357(a)(2). For these reasons, Plaintiffs do not state a claim that their rights were violated when they were initially detained and questioned at the PPA facility.

The final phase of the operation—after Plaintiffs were confirmed to be U.S. citizens—is a closer question. Plaintiffs have alleged that after confirming their U.S. citizenship, Defendants told them that they were not permitted to leave, speak, or stand, and ICE agents, some of whom were armed, stood by the exit, displaying guns strapped to their waists. Under an objective test, Plaintiffs have pled sufficient facts to show that a reasonable person would believe he was not free to leave the room. United States v. Mendenhall, 446 U.S. 544, 554 (1980) (stating that an individual is "seized" if he reasonably believes he is not free to leave); United States v. King, 604 F.3d 125, 138 (3d Cir. 2010). Thus, they have alleged that they were barred from leaving the PPA facility even though Defendants no longer had probable cause to continue holding them or reasonable suspicion that they violated the immigration laws.[7] Determining whether or not this continued seizure was justified requires that we balance "the intrusion on the

---

[7] Defendants cite to United States v. Leal, 235 F. App'x 937 (3d Cir. 2007), in which we held that a ninety minute wait for a canine unit to arrive following a traffic stop was not unreasonable. In that case, however, the authorities retained reasonable suspicion that the plaintiff had violated the law. Here, the authorities, aware that Plaintiffs were U.S. citizens and not illegal aliens, lacked reasonable suspicion that they had violated the law.

9

individual's Fourth Amendment interests against its promotion of legitimate government interests." Maryland v. Buie, 494 U.S. 325, 331 (1990) (citations omitted). In conducting this balancing test, courts weigh the duration, nature and quality of the intrusion, the governmental interests—such as crime prevention and detection, officer safety, evidence destruction, and control over an operation—alleged to justify the intrusion, and the individual's Fourth Amendment interests in being free from seizure. See, e.g., Illinois v. McArthur, 531 U.S. 326, 336 (2001) (holding an officer lawfully prevented defendant from entering his home for two hours while obtaining a search warrant for drugs based on a tip); Baker v. Monroe Twp., 50 F.3d 1186, 1191-92 (3d Cir. 1995) (holding it was reasonable for police to force individuals onto the ground and detain them for 25 minutes during a dangerous, "swiftly developing" drug raid).

Plaintiffs allege that they were told that they could not leave the PPA facility because Defendants did not want them to alert the next wave of taxi drivers to the operation.[8] While there may be circumstances where there is reasonable basis to detain a person suspected of no wrongdoing, the allegations—Plaintiffs' detention for several hours after they were no longer suspected of wrongdoing and the absence of allegations of serious criminal law violations or a dangerous, dynamic situation—may constitute an unlawful seizure under the Fourth Amendment.

Nonetheless, there is still a problem with the Amended Complaint. As the District Court observed, the repeated and collective use of the word "Defendants"

---

[8] In its brief, the Government argued that Plaintiffs were detained to both ensure the success of the operation and for officer safety, but the latter point is not alleged in the pleading.

10

"fail[ed] to name which specific Defendant engaged in the specific conduct alleged." App. 10-11. As a result, the Amended Complaint is ambiguous about each Defendant's role in the operation and whether he committed the act himself or supervised other agents in doing so. In using the collective "Defendants," Plaintiffs alleged that each of the Defendants: (a) directed the PPA to send the letters to Plaintiffs advising them that they were entitled to a refund, to be picked up at the PPA facility; (b) attacked each driver, throwing him against a wall and handcuffing him; (c) was told by Plaintiffs that Plaintiffs were citizens; (d) interrogated each Plaintiff for more than one hour; (e) acknowledged to each Plaintiff that he "had been mistakenly detained," but (f) told them they were not permitted to leave; (g) held the Plaintiffs for several additional hours; and (h) prohibited them from speaking or standing. There is a serious question as to whether it is plausible that each of the three defendants committed all of the acts ascribed to them, particularly given the number of other individuals brought to the facility during the operation and the affidavits submitted with Defendants' motion to dismiss. See, e.g., Declaration of William Riley, App. 78.

In light of these ambiguities, the Amended Complaint may fail to meet Iqbal's directive that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676 (emphasis added); see also Pahls v. Thomas, 718 F.3d 1210, 1225-26 (10th Cir. 2013) (observing that it is "incumbent upon a plaintiff to identify the specific actions taken by particular defendants" to state a viable Bivens claim (citations, emphasis, and quotation marks omitted)).

11

Moreover, given the very narrow potential claim upon which relief may be granted, it is difficult for Defendants to determine which of them are alleged to have held or directed others to hold Plaintiffs after their U.S. citizenship was verified and they were no longer suspected of violating the immigration laws. To the extent Plaintiffs seek to proceed on a theory of supervisory liability, the pleading likely requires further factual assertions linking the direction or act of an individual defendant to the alleged unconstitutional conduct. See Santiago, 629 F.3d at 131-34 & n9.

Thus, to resolve the ambiguity regarding the precise actions each individual Defendant allegedly took, we will provide Plaintiffs a final opportunity to file a pleading that provides the factual enhancements that specify the acts each individual Defendant[9] allegedly took, explains whether each Defendant personally engaged in the acts or if the actions were taken at the specific Defendant's direction, and includes facts concerning the reasonableness of Plaintiffs' detention. Of course, such a pleading must comply with Fed. R. Civ. P. 11.

If Plaintiffs choose to file a Second Amended Complaint, the District Court will be free to entertain another motion to dismiss before permitting any discovery and determine whether Plaintiffs have alleged facts that demonstrate a specific Defendant plausibly engaged in an unreasonable seizure after they verified Plaintiffs' citizenship status, and,

---

[9] Nothing herein constitutes a ruling concerning any request to add new parties. If there is a request to add new parties, then the defendants may raise any objection that they deem appropriate, including objections based upon the statute of limitations and/or the considerations under Fed. R. Civ. P. 15 and 20 and the applicable case law.

even if sufficiently alleged, whether the specific Defendant is entitled to qualified immunity.[10]

## IV.

For the foregoing reasons, we will affirm in part, vacate in part, and remand.

---

[10] Because we are allowing Plaintiffs to add factual enhancements to their Fourth Amendment claims, we need not review the District Court's ruling on qualified immunity, as it was based on a pleading that may be superseded.