**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 1, 2018[*]
Decided March 13, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 17-1535

| | |
|---|---|
| NATASHA ADAMS, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 14-1415 |
| | |
| CITY OF PEORIA, et al., | Michael M. Mihm, |
| *Defendants-Appellees*. | *Judge*. |

**O R D E R**

Natasha Adams was living for about two months in a house in Peoria, Illinois, that she thought was abandoned. Eventually the putative homeowner, Nicole Sanchez, returned and told Adams to leave. A week after Adams refused, Sanchez removed Adams's possessions from the home, and the police did not stop the removal. In this suit against the police under 42 U.S.C. § 1983, Adams contends that the police violated the Fourth Amendment and denied her due process by not preventing Sanchez from taking her personal property. The district court entered summary judgment for the

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

defendants. Because the police do not violate the Constitution by not preventing unlawful conduct of a private party, we affirm.

We review the entry of summary judgment de novo and recount the facts in the light most favorable to Adams. *See Chaib v. GEO Grp., Inc.*, 819 F.3d 337, 340 (7th Cir. 2016). Adams moved into an empty house in Peoria in July 2014. About two months later Nicole Sanchez came to the house and told Adams that Sanchez owned it and wanted Adams to leave. Adams refused to vacate without an eviction notice, so Sanchez summoned Officer Matt Legaspi, a friend of hers and the main defendant here. Officer Legaspi told Adams that he knew Sanchez owned the house and that he would return in about a week to ensure that Adams had vacated. He did not accept Adams's claim, for which she said she had supporting papers, that she lawfully occupied the house. And at some point in the chronology, Adams asserts, Officer Legaspi told Sanchez that she could "do whatever she wanted with" Adams's possessions.

One week later, Sanchez returned with moving vehicles and with friends to help her move Adams's possessions out of the house. When they arrived, Adams tried unsuccessfully to convince Sanchez that she could stay in the house. Sanchez offered that Adams could take time that day to remove her possessions on her own and that Sanchez would even help pay for storage. But Adams insisted on staying put, so Sanchez and her friends started loading Adams's possessions in their vehicles.

Adams tried to stop the seizure by calling the police. She spoke to a lieutenant who sent an officer to the house. This officer, whom Adams has not sued and was not Officer Legaspi, "was the only one there" when Sanchez was removing the property. He did not stop Sanchez. It apparently took Sanchez more than one day to remove all of Adams's possessions, and at some point Adams was arrested for trespassing. Soon after the arrest, Sanchez and her friends drove away with the last of Adams's possessions. Adams believes that Sanchez has kept or destroyed her property. Adams later filed a complaint with the police department, but another lieutenant told her that the police officers acted properly.

After the court denied a motion to dismiss, discovery followed and the defendants moved for summary judgment. The principal issue was whether Officer Legaspi, the two lieutenants, and the City of Peoria violated Adams's constitutional rights when Sanchez seized her possessions. *See* 42 U.S.C. § 1983. The district judge entered summary judgment for the defendants. He decided that Adams's claim against the City and the officers "sounds in due process." But that claim failed, the judge said, because Adams had not shown that the defendants were present when Sanchez took

her property and, in any case, she had a meaningful post-deprivation remedy. He also ruled that the City was not liable solely for employing the officers.

Adams asserts that in entering summary judgment, the district judge failed to recognize that in her complaint she raised a claim that Officer Legaspi violated the Fourth Amendment by allowing Sanchez to take Adams's property. We agree. District courts must liberally construe pro se complaints, *see Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017). Adams alleged that Officer Legaspi "allowed Ms. Sanchez to seize our possessions." This is the language of Fourth Amendment cases. *See Soldal v. Cook Cty.*, 506 U.S. 56 (1992); *Pepper v. Vill. of Oak Park*, 430 F.3d 805 (7th Cir. 2005). The district judge even recognized this when, in denying part of the defendants' motion to dismiss, he discussed a Fourth Amendment claim. On appeal Adams expressly refers to the Fourth Amendment and cites *Soldal*. The defendants do not contend Adams has forfeited this theory. Thus in reviewing the entry of summary judgment, we consider the Fourth Amendment.

The principal issue is whether the record contains a sufficient basis for a factfinder to conclude that Officer Legaspi violated the Fourth Amendment by enabling Sanchez to seize and remove Adams's possessions. An officer violates the Fourth Amendment by personally seizing property unreasonably. *See Illinois v. McArthur*, 531 U.S. 326, 330–33 (2001); *Bell v. City of Chicago*, 835 F.3d 736, 739 (7th Cir. 2016). That did not occur here. An officer also violates the Fourth Amendment when a private party seizes a person's possessions if the officer enables that seizure despite knowing that it violates the law. *See Soldal*, 506 U.S. at 60 n.6, 71–72. But an officer who simply fails to stop a legal violation by a private party does not offend the Constitution. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748 (2005).

Adams has not supplied evidence sufficient to persuade a reasonable trier of fact that Officer Legaspi knew of an impending legal violation, let alone enabled it. *See Wilson v. Warren Cty., Ill.*, 830 F.3d 464, 469 & n.2 (7th Cir. 2016); *Pepper*, 430 F.3d at 809–10. To begin, no evidence in the record suggests that Officer Legaspi was present when Sanchez removed Adams's property. To the contrary, Adams swore that the officer dispatched to the house after she called the police—whom she has not sued—"was the only one there." And the statement that Adams attributes to Officer Legaspi—that Sanchez could "do whatever she wanted" with Adams's property—is also insufficient to impute liability. That statement does not suggest that Officer Legaspi *knew* that Sanchez would take and keep Adams's possessions unlawfully, much less that he helped her do so. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)

(liability requires evidence that defendant directed or knew and consented to constitutional violation). And for the same reasons, unlike the record in *Soldal*, 506 U.S. at 60 n.6, the record in this case does not permit an inference of a conspiracy between Sanchez and the police to take Adams's property. *See Pepper*, 430 F.3d at 810–11.

The rulings on the remaining claims also are correct. Adams argues that, by not stopping Sanchez from taking her property, Officer Legaspi violated her right to due process. But Sanchez points to no state or local policy that *required* Officer Legaspi to let Sanchez take Adams's property. If, as Adams contends, Officer Legaspi let Sanchez take the property, he did so on his own. And because Illinois offers an adequate post-deprivation remedy—conversion—for the taken property, no violation of due process occurred. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Tucker v. Williams*, 682 F.3d 654, 661 (7th Cir. 2012); *Easter House v. Felder*, 910 F.2d 1387, 1396, 1406 (7th Cir. 1990) (en banc).

Summary judgment also was properly entered for the other defendants. The City cannot be held liable under § 1983 merely for employing the officers who allegedly violated Adams's constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694–95 (1978); *Estate of Perry v. Wenzel*, 872 F.3d 439, 460–61 (7th Cir. 2017). And in any case no underlying violation occurred.

AFFIRMED