IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 2, 2016

**JEFFERY L. VAUGHN v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Dyer County**
**No. 11-CR-230      R. Lee Moore, Jr., Judge**

_____

**No. W2015-00921-CCA-R3-PC  -  Filed April 12, 2016**
_____

Petitioner, Jeffery[1] L. Vaughn, appeals the denial of his petition for post-conviction relief. Petitioner asserts that he received ineffective assistance of counsel when trial counsel failed to convey a favorable plea offer, failed to file a motion to suppress text messages, and failed to adequately prepare Petitioner to testify. Upon our review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

James E. Lanier, District Public Defender, and Sean P. Day, Assistant District Public Defender, for the appellant, Jeffery L. Vaughn.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; C. Phillip Bivens, District Attorney General; and Karen Burns, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural Background*

_____

[1] In the record, Petitioner's name is spelled variously as "Jeffrey" and "Jeffery." We will use the spelling used in the August 9, 2011 order amending the indictment.

On April 26, 2012, Petitioner was convicted by a Dyer County jury of one count of possession with the intent to sell or deliver more than 0.5 grams of cocaine. The trial court sentenced Petitioner to fourteen years of incarceration. This Court affirmed the conviction and sentence on direct appeal, and the supreme court denied Petitioner's application for permission to appeal. *See State v. Jeffrey L. Vaughn*, No. W2012-01987-CCA-R3-CD, 2013 WL 1282331, at *1 (Tenn. Crim. App. Mar. 28, 2013), *perm. app. denied* (Tenn. Sept. 25, 2013).

The evidence developed at trial[2] established that on March 6, 2011, Officer Lynn Waller and Sergeant Brian Peckenpaugh were dispatched to a supposedly vacant house in response to complaints about a suspicious vehicle. When the officers arrived on the scene, they saw a vehicle matching the description of the suspicious vehicle parked in a driveway alongside a pickup truck. Petitioner exited the passenger side of the pickup truck and approached Officer Waller. Officer Waller asked Petitioner if he had any weapons, and Petitioner consented to a search by "throwing his hands up in the air and saying 'Yeah, go ahead and search me.'" *Id.* Officer Waller conducted a pat down and felt a lump in Petitioner's pocket. Officer Waller pulled out a plastic bag containing six small rocks, which were later determined to be 1.6 grams of crack cocaine. Petitioner also had $200 in the same pocket but did not have any paraphernalia. The woman with Petitioner, Christina Hunt, also had powder cocaine on her person, which she stated that she received from Petitioner in exchange for giving him a ride. Sergeant Peckenpaugh discovered two cell phones belonging to Petitioner, one in each vehicle. These phones contained several text messages discussing drug deals and were receiving additional messages while on the scene.

Both Petitioner and Ms. Hunt testified that Petitioner was at the address in question because he was feeding the homeowner's dogs. Petitioner testified that Ms. Hunt called him looking for marijuana. Petitioner offered to share his last blunt with her if she would give him a ride to pay some bills. Petitioner testified that he did not own the vehicle that was reported as suspicious but that he had driven it on prior occasions. Petitioner testified that he did not drive that vehicle that evening because it had a broken fuel pump. Petitioner testified that when he told the officer that he did not have any weapons on him, the officer handcuffed him, told him not to move, and searched Petitioner's pocket without his consent. Ms. Hunt similarly testified that she did not hear Petitioner give consent for the search. Petitioner testified that he did not intend to sell the cocaine to anyone and denied that he used the street name "New York" referenced in the

---

[2] The following facts were gleaned from both this Court's opinion on direct appeal as well as the original trial transcript. Though the transcript was not made part of the technical record in this case, this Court may take judicial notice of court records in earlier proceedings of the same case. *State v. Lawson*, 291 S.W.3d 864, 869-70 (Tenn. 2009).

text messages. Ms. Hunt denied that she told the officer that she got the cocaine found on her person from Petitioner. When Petitioner testified on cross-examination that he did not sell drugs, the trial court ruled that he had "opened the door" to impeachment with his prior convictions for selling cocaine in 1990 and 1995.[3]

On July 11, 2014, Petitioner filed a timely pro se petition for post-conviction relief. As relevant to this appeal, Petitioner asserted that he received ineffective assistance of counsel.[4] Post-conviction counsel was appointed, but no amended petition was filed. A hearing was held on December 16, 2014.

At the post-conviction hearing, trial counsel testified that he was retained to represent Petitioner before the indictment was issued. Trial counsel had been practicing law for almost twenty years, and approximately twenty percent of his practice was criminal law.

Trial counsel filed a motion to suppress evidence based on a pre-textual stop. Trial counsel also argued that the officers should not have searched the vehicles, wherein the cell phones with the incriminating text messages were found. Trial counsel described the motion to suppress as a "global motion" that involved anything the police found after the initial stop. However, trial counsel did not file a specific motion to suppress the text messages contained on the cell phones because, at the time, it was permissible to search the contents of a phone as a search incident to arrest. After a lengthy suppression hearing, wherein trial counsel called several witnesses to testify, the trial court ruled that both the cocaine and the cell phones were admissible, finding that the officers had reasonable suspicion and that Petitioner consented to the search.

Trial counsel testified that the State first offered a plea deal that included some jail time followed by probation, but Petitioner did not want any jail time. Shortly before trial, the State made an offer of six years' probation which "surprised" trial counsel. Trial counsel thought Petitioner would "jump on that" offer, but Petitioner rejected it because he did not want to be "on paper" that long. Trial counsel explained that if Petitioner was convicted at trial, he was facing twelve to twenty years as a Range II offender and potentially an even longer sentence as a Range III offender.

---

[3] This Court found no error in the trial court's application of Tennessee Rules of Evidence 404(b) and 609 to these convictions. *Jeffrey L. Vaughn*, 2013 WL 1282331, at *8. It appears that the State introduced only the 1990 conviction as impeachment.

[4] Other issues raised in the pro se petition were not raised on appeal and are, therefore, deemed abandoned. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. 2009), *perm. app. denied* (Tenn. Apr. 16, 2010).

As part of his investigation, trial counsel spoke to the police officers as well as potential witnesses for the defense. Ms. Hunt was originally supposed to testify for the State but ultimately recanted the statement she made to the police and testified for the defense at both the suppression hearing and at trial. Given the fact that they had already lost a suppression motion, trial counsel advised Petitioner not to go to trial. However, Petitioner was insistent that he wanted to go to trial, so trial counsel had Petitioner sign a document that he was proceeding to trial against the advice of his attorney. Trial counsel testified that he explained to Petitioner what would happen at trial and that Petitioner was familiar with the process from his prior convictions. The strategy at trial was to argue that Petitioner possessed the drugs for his personal use.

Despite trial counsel's advice against it, Petitioner wanted to testify. Trial counsel explained to Petitioner that his prior convictions for sale of cocaine could be used against him as impeachment and that it would "certainly not be good" if the jury heard about those convictions. Trial counsel filed a motion in limine to try to exclude Petitioner's prior convictions, and the trial court determined that they should be excluded unless Petitioner opened the door to impeachment during his testimony. Trial counsel met with Petitioner prior to trial to go over his testimony and to explain the concept of "opening the door." Trial counsel warned Petitioner against testifying that he was not a drug dealer or that he had never sold drugs. Ultimately, it was Petitioner's decision to testify. During Petitioner's testimony, trial counsel engaged in a bench conference to argue that Petitioner's statement "I don't sell drugs" had not opened the door to admitting his prior convictions, but the trial judge ruled otherwise.

Petitioner testified that he only met with trial counsel once and that trial counsel often did not appear for scheduled meetings. Petitioner admitted that he spoke to trial counsel on the phone several times and even met with trial counsel's father, another seasoned criminal attorney. Petitioner testified that he originally wanted to hire trial counsel's father but that he was not available when Petitioner first came to the office. Petitioner testified that he wrote two letters to the trial court asking for trial counsel to be removed because Petitioner felt that trial counsel "ain't representing me right" and that he was "really not trying to help me at all." Petitioner also wrote letters to the Board of Professional Responsibility. Petitioner felt that his relationship with trial counsel deteriorated after he wrote those letters. Petitioner admitted that trial counsel filed a motion to be removed from the case, which was denied by the trial court. Petitioner testified that trial counsel did not seem very interested in his case.

Petitioner denied that trial counsel explained to him how much time he was facing. Petitioner claimed that he signed a form indicating that his potential sentencing exposure was eight to twelve years. Petitioner testified that he was offered a plea for ten years of probation after nine months in jail. Petitioner denied that he was ever informed of a plea offer of six years of probation without any jail time and that if he had been aware of such

an offer, "I probably would have took that." Petitioner testified that trial counsel wanted to take the case to trial and was "confident he could beat it."

With regard to the motion to suppress, Petitioner admitted that he gave the officer consent to search him for weapons but that the officer continued the search after he "seen I didn't have any weapons." Petitioner wanted the evidence suppressed based on the officer exceeding the scope of Petitioner's consent and based on the address in the dispatch being different from the address where Petitioner was located. Petitioner did not think that trial counsel did a "good job" on the suppression motion.

Petitioner testified that he was "under the impression" that he was not going to testify at trial, so he and trial counsel "never had a chance to talk about anything pertaining to it." In fact, Petitioner testified that he was "shocked" when trial counsel called him to the stand. Petitioner believed that because of the motion in limine, the State would not be able to use his prior convictions against him if he testified. Petitioner denied that trial counsel explained to him the concept of "opening the door" to the prior convictions or otherwise prepared him to testify.

After the hearing, the post-conviction court ruled from the bench. The post-conviction court found that trial counsel "did not think it was in [Petitioner's] best interest to go to trial" and had Petitioner sign a form to that effect. However, trial counsel developed a strategy of arguing that Petitioner possessed the cocaine for personal use rather than for sale. The post-conviction court accredited trial counsel's testimony that he informed Petitioner of the sentence range he was facing and of the six-year probation offer. The post-conviction court found that Petitioner's testimony about whether he would have proceeded to trial had he known of the lower offer was equivocal. The post-conviction court found that it was Petitioner's decision to testify at trial and that he was informed of his right against self-incrimination. The post-conviction court found that trial counsel did everything he could to exclude Petitioner's prior convictions but that Petitioner opened the door in his testimony. The post-conviction court concluded that Petitioner failed to carry his burden of proof with regard to showing either deficient performance or prejudice.

*Analysis*

On appeal, Petitioner argues that he received ineffective assistance of counsel because trial counsel failed to convey a favorable plea offer, failed to suppress the incriminating text messages found on the cell phones, and failed to prepare Petitioner to testify. The State disagrees, asserting that none of these claims have merit. We agree with the State.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Burnett v. State*, 92 S.W.3d 403, 408 (Tenn. 2002). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). A defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). This Court will not use hindsight to second-guess a reasonable trial strategy, *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994), even if a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation." *House v. State*, 44 S.W.3d

508, 515 (Tenn. 2001) (quoting *Goad*, 938 S.W.2d at 369). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694). The petitioner is not required to show that he would have been acquitted; a showing of a "reasonable probability of being found guilty of a lesser charge, or [receiving] a shorter sentence" is sufficient to satisfy the prejudice prong. *Brimmer v. State*, 29 S.W.3d 497, 508 (Tenn. Crim. App. 1998).

Whether a petitioner has been denied the effective assistance of counsel presents a mixed question of law and fact. *Burns*, 6 S.W.3d at 461. This Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley*, 960 S.W.2d at 578). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Henley*, 960 S.W.2d at 579. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Momon*, 18 S.W.3d at 156 (citing *Henley*, 960 S.W.2d at 578). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

### A. Plea Offer

Petitioner alleges that trial counsel failed to convey a favorable plea offer of six years' probation. A defendant is entitled to effective representation during plea negotiations as well as during trial. *Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399, 1407-09 (2012); *see also Hill v. Lockhart*, 474 U.S. 52, 58-59, (1985). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 132 S. Ct. at 1408; *see also Harris v. State*, 875 S.W.2d 662, 665-66 (Tenn. 1994). "A fair trial does not correct trial counsel's deficient performance in failing to convey a plea offer." *Nesbit v. State*, 452 S.W.3d 779, 787 (Tenn. 2014). In order to establish prejudice, there

must be a reasonable probability that the petitioner would have accepted the plea offer had it been properly conveyed. *State v. Garrison*, 40 S.W.3d 426, 431 (Tenn. 2000).

In this case, trial counsel testified that he was "surprised" when the State conveyed a six-year probationary offer close to trial. Trial counsel testified that he relayed the offer to Petitioner and that Petitioner rejected it because he did not want to be on probation that long. The post-conviction court accredited this testimony, and we will not revisit credibility determinations on appeal. Moreover, the post-conviction court found that Petitioner's testimony was equivocal about whether he would have accepted the six-year offer. Petitioner has failed to prove either deficient performance or prejudice and is not entitled to relief.

### B. Motion to Suppress

Despite a lengthy suppression hearing in which trial counsel attempted to suppress all evidence discovered as a result of the stop, Petitioner faults trial counsel for failing to specifically move to suppress the text messages found on the cell phones recovered from the two vehicles, which police read without first obtaining a search warrant to grant access to the data. Petitioner acknowledges in his brief that the law supporting suppression of the text messages did not exist at the time of his trial in April 2012.[5] It was not until 2014 that the United States Supreme Court ruled that a search warrant is generally required before the search of any data stored on a cell phone, even when the phone is seized incident to an arrest. *Riley v. California*, __ U.S __, 134 S. Ct. 2473, 2493 (2014). Similarly, Tennessee Code Annotated section 40-6-110, requiring a search warrant for law enforcement to examine data stored on a cell phone, such as text messages, became effective July 1, 2014. "Trial counsel cannot be held to a standard of being clairvoyant concerning a case not yet decided." *Darryl Lee Elkins and Rhonda Grills v. State*, Nos. E2005-02153-CCA-R3-PC and E2005-02242-CCA-R3-PC, 2008 WL 65329, at *6 (Tenn. Crim. App. Jan. 7, 2008) (holding that trial counsel was not deficient for failing to anticipate the ruling in *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999), released one month after petitioners' trial), *perm. app. denied* (Tenn. May 27, 2008). Therefore, it was not deficient performance on the part of trial counsel to fail to argue a legal theory which, at the time, lacked any statutory or precedential support.

### C. Preparing Petitioner to Testify

---

[5] Petitioner cites, without explanation, *Illinois v. McArthur*, 531 U.S. 326 (2001), for the proposition that trial counsel could have moved to suppress the text messages based on then-existing case law. That case addressed the reasonableness of police officers' securing a scene to prevent the destruction of evidence while awaiting a search warrant. Though cited in *Riley* as supporting the practice of police officers' seizing a phone while awaiting a search warrant for its contents, *see* 134 S. Ct. at 2487-88, we fail to see how *McArthur* lends any support to the suppression of the text messages in this case.

Finally, although not raised in his petition, Petitioner asserts that trial counsel did not inform Petitioner that he would be called to testify at trial, did not adequately prepare him to testify, and did not explain the concept of "opening the door" to his prior convictions. Trial counsel, on the other hand, testified at the post-conviction hearing that he had numerous discussions with Petitioner advising him against testifying, but Petitioner insisted. Trial counsel testified that he explained to Petitioner the significance of the trial court's ruling on the motion in limine concerning Petitioner's prior convictions, explained the concept of "opening the door," and gave Petitioner specific examples of things to avoid saying. The post-conviction court accredited trial counsel's testimony over Petitioner's, and we will not revisit credibility determinations on appeal. The evidence in the record supports the post-conviction court's determination that trial counsel thoroughly and competently advised Petitioner regarding the wisdom of Petitioner's decision to testify. Petitioner is not entitled to relief.

*Conclusion*

Based on the foregoing, we affirm the judgment of the post-conviction court.

_____
TIMOTHY L. EASTER, JUDGE