# United States Court of Appeals
## For the First Circuit

No. 06-1462

UNITED STATES OF AMERICA,

Appellee,

v.

CHARLES ST. PIERRE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Boudin, Chief Judge,
Cyr and Stahl, Senior Circuit Judges.

Peter J. Cyr, with whom Law Offices of Anthony J. Sineni III, LLC, was on brief, for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief, for appellee.

June 13, 2007

**STAHL, <u>Senior Circuit Judge</u>.** Charles St. Pierre appeals the denial by the United States District Court for the District of Maine of his motion to suppress evidence. We affirm.

On February 17 and 24, 2005, government agents made two controlled purchases of crack cocaine from Elmer Larson. At the time of the second purchase, the agents provided Larson with $500 in marked bills, which he then took to St. Pierre's apartment at the Gray Terrace Apartments in Gray, Maine. At 8:30 a.m. Larson returned to the agents with 2.2 grams of crack cocaine. After giving the drugs to one of the government agents, Larson was arrested and then quickly agreed to cooperate with the government. He identified a resident of the Gray Terrace Apartments named "Charlie" as the person who had supplied him with the drugs.

That same morning, the agents fitted Larson with a listening device and had him return to St. Pierre's apartment. Although Larson and St. Pierre had a discussion there, the agents were unable to understand much of it over the device. After a few minutes, Larson left the apartment and returned to the agents. He told them that St. Pierre had discussed doing a transaction later that day, around 3:00 p.m. Larson also told them that St. Pierre had sent him out to fetch a soda and that St. Pierre had said that he would give him "a line" when he returned.

With that knowledge, the agents faced a dilemma because they were unwilling to allow Larson to do drugs while cooperating

with the government.  But Larson also told the agents that if he did not return with the soda within a few minutes, St. Pierre might become suspicious.  The agents on the scene considered applying for a search warrant immediately, but decided that there was simply not enough time to wait for a warrant to be issued.  Concerned that St. Pierre would soon become suspicious that something was amiss and then destroy evidence, the agents decided to secure the apartment without a warrant.

At around noon, the agents knocked on the door and announced their presence.  St. Pierre opened the door, wearing a tee-shirt and boxer shorts.  One agent grabbed him to make sure that he was unarmed, and in the commotion St. Pierre and the agent tripped and fell backwards into the apartment.  St. Pierre was handcuffed and, because his underpants were "soiled," the agents retrieved a pair of pants off the floor and helped St. Pierre to put them on.  How those pants came to be on St. Pierre is the focal point of his appeal, although the record is unclear whether they were put on at the suggestion of St. Pierre or at the insistence of the agents.

Because St. Pierre's girlfriend gave consent to search the apartment, the agents did not seek a search warrant.  In the search that ensued, the agents discovered a quantity of drugs and a large amount of U.S. currency.

St. Pierre was arrested and brought to the U.S. Marshal's office in Portland, Maine, where, following standard procedure, he was strip-searched before being put in a holding cell. In his pants pocket, the marshals discovered $380 of the marked $500 that the agents had used to purchase drugs from Larson. St. Pierre was charged with three counts of distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1).

On May 3, 2005, St. Pierre filed a motion to suppress "any and all evidence seized as a result of the warrantless search of Defendant's residence." The government initially opposed the motion, but withdrew its opposition on July 1, and the motion was granted on July 5.[1] A dispute later arose as to whether the suppression motion also covered the money that was found in St. Pierre's pants at the time of his booking.

On August 16, the court allowed the defendant's original suppression motion to be orally amended to include the $380 found in St. Pierre's pants at his booking, and a hearing on that issue followed. On August 30, the district court denied the motion to suppress with respect to the $380. The trial proceeded, and the jury found St. Pierre guilty of the two remaining counts. He was sentenced to seventy months' imprisonment and five years' supervised release. This timely appeal followed.

---

[1]Following this, one of the three counts was dismissed, since it had been based on evidence seized during the warrantless search.

"The district court's conclusions of fact are reviewed for clear error, but we afford plenary review to the district court's ultimate conclusion regarding exigent circumstances." United States v. Samboy, 433 F.3d 154, 158 (1st Cir. 2005). "'We will uphold a denial of a motion to suppress if any reasonable view of the evidence supports it.'" United States v. Kornegay, 410 F.3d 89, 93 (1st Cir. 2005) (quoting United States v. Mendez-de Jesus, 85 F.3d 1, 2 (1st Cir. 1996)).

"[I]t is settled beyond peradventure that a search of an individual's person made incident to a valid arrest is itself valid, despite the absence of an arrest warrant." United States v. Winchenbach, 197 F.3d 548, 552 (1st Cir. 1999); accord United States v. Robinson, 414 U.S. 218, 224 (1973). For the arrest of St. Pierre to be valid, the agents had to be both lawfully inside the apartment and to have probable cause based on evidence other than that found during the search. Winchenbach, 197 F.3d at 554. The parties do not dispute that probable cause existed as of the time that Larson was arrested. Therefore, we focus first on the issue of lawful entry.

"[A] warrantless entry into a person's dwelling may be permitted if exigent circumstances arise." Samboy, 433 F.3d at 158 (1st Cir. 2005) (internal quotation marks omitted). Such exigent circumstances arise when, inter alia, the police have a reasonable fear that a person would destroy drug evidence unless the person's

premises are secured. <u>Illinois</u> v. <u>McArthur</u>, 531 U.S. 326, 331-32 (2001). The district court found that the agents had a reasonable belief that such exigent circumstances existed in this case, because Larson's failure to return could signal their presence to St. Pierre. <u>See</u> <u>Samboy</u>, 433 F.3d at 158-59 (courier's arrest and resultant failure to return to dealer can cause fear in police that dealer would be alerted to their investigation and would destroy evidence). We agree. Therefore, because the police were lawfully within the apartment and had probable cause to arrest St. Pierre, the arrest was lawful.

The question that remains is whether the pants were properly searched during the booking process.[2] An "inventory search" of an arrestee's personal effects at a police station is permissible under the Fourth Amendment. <u>Illinois</u> v. <u>Lafayette</u>, 462 U.S. 640, 648 (1983). The Supreme Court has upheld inventory searches of, e.g., an arrestee's shoulder bag, <u>id.</u>, an impounded

---

[2]The defendant argues that, even if the warrantless entry were lawful, the evidence in the pants should nonetheless be suppressed under the original suppression order. However, he did not object to the oral amendment to his original suppression motion or to the subsequent evidentiary hearing. Thus, by not objecting to treating the $380 as outside of the original suppression motion and order, he waived the argument that it was included. <u>See</u> <u>United States</u> v. <u>JG-24, Inc.</u>, 478 F.3d 28, 32 (2007). Therefore, we review the argument for plain error only, which requires that the defendant demonstrate (1) an error (2) which was clear, (3) affected his substantial rights, and (4) seriously impaired the fairness or integrity of the proceeding. <u>Id.</u>; <u>see</u> <u>United States</u> v. <u>Olano</u>, 507 U.S. 725, 731-32 (1993). We find no such error here, in large part because there was other substantial evidence of guilt.

car's glove compartment, <u>South Dakota</u> v. <u>Opperman</u>, 428 U.S. 364, 376 (1976), and a backpack found in an impounded car, <u>Colorado</u> v. <u>Bertine</u>, 479 U.S. 367, 375 (1987). In those cases, the key facts were that the police "were following standardized procedures" and were not "act[ing] in bad faith or for the sole purpose of investigation." <u>Id.</u> at 372. Such searches were considered "reasonable" under the Fourth Amendment, regardless of whether there was probable cause or the police had a warrant, because the procedures were developed for independent reasons, such as the safety of the officers or the protection of an owner's property while in the custody of the police. <u>Id.</u> That reasoning would break down, however, if the procedures were manipulated for investigatory purposes.

Therefore, the circumstances by which the pants came to be on St. Pierre are important. If it were the case that the police, knowing that the evidence found in the apartment search was likely to be suppressed, conspired to stash the $380 in the pocket of a pair of pants and then coerce St. Pierre into wearing them, this would be a very different case. Here, however, St. Pierre has not alleged any bad faith by the agents, nor is there any evidence of such. Furthermore, having the consent of the girlfriend to search the apartment, the agents had no reason to believe that the evidence they discovered would be suppressed. Finally, given St. Pierre's condition, it was entirely reasonable for all parties,

-7-

himself included, to want him to be given pants, and there is no evidence that he protested or asked for a different pair of pants. Thus, under these somewhat unusual circumstances, a search of St. Pierre's pants at booking was proper, and we see no error in the denial of the motion to suppress the $380.[3]

**Affirmed.**

---

[3]The government argues implicitly that St. Pierre's tacit consent to wearing the pants is equivalent to an arrestee's consent to a warrantless search. We do not decide that issue here, however, since the question of consent to a search is problematic when (a) St. Pierre consented only to wearing pants, and (b) the ability to give consent to a warrantless search is questionable under these sorts of circumstances. See Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); United States v. Twomey, 884 F.2d 46, 51 (1st Cir. 1989). Our decision is based instead on the fact that St. Pierre consented to wearing pants in a situation where wearing pants was eminently reasonable and no police bad faith was alleged, and that such pants were then reasonably searched at booking pursuant to an inventory search policy.