# United States Court of Appeals
## For the First Circuit

No. 20-2184

UNITED STATES,

Appellee,

v.

ABOUBACAR CONGO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

Mary E. Davis and Davis & Davis on brief for appellant.
Noah Falk, Assistant United States Attorney, and Donald
E. Clark, Acting United States Attorney, on brief for appellee.

December 17, 2021

**LYNCH**, **Circuit Judge**.  Aboubacar Congo pleaded guilty to conspiring to distribute, and to possess with intent to distribute, fentanyl and cocaine base.  He did so after the district court denied his motion to suppress evidence obtained during the execution of a no-knock search warrant at the apartment where he and his girlfriend, Lisa Lambert, lived.  In pleading guilty, he reserved the right to appeal the outcome of the suppression motion.

Congo now appeals the denial of his motion to suppress. On appeal, he contends that the district court made two errors. He argues that the district court erred in not suppressing evidence obtained from the search because his backpack, which was found in the apartment, was not properly subject to search.  He then argues for the first time on appeal that the district court erred in failing to find that there was insufficient justification for the no-knock provision of the warrant.  We hold there was no error by the district court in denying the motion to suppress, and the district court did not plainly err in failing to find the no-knock provision unjustified. We accordingly affirm.

## I. Background

On November 18, 2018 at around 6:00pm, agents from the United States Drug Enforcement Administration ("DEA") executed a no-knock search warrant at an apartment at 42 Washington Avenue in Old Orchard Beach, Maine.  The agents entered using a ram to force the door open and found seven people inside the apartment,

including the defendant Congo. They searched the entire apartment and recovered more than ten grams of fentanyl and more than 33 grams of cocaine base, as well as drug paraphernalia. While searching one of the bedrooms, the agents found a backpack on the floor which was determined to be Congo's based on a search of its contents. Inside the backpack, they found a storage unit bill and key, several cell phones, a New York City parking receipt, and a New York City toll invoice. The agents seized no evidence from Congo's person. Three of the seven individuals in the apartment during the search were not charged with crimes relating to it; one was arrested on an outstanding arrest warrant and two were released from the scene. The storage unit corresponding to the storage unit bill and key found in the backpack was subsequently searched, and a .380 caliber pistol, ammunition, documents bearing Congo's name, a digital scale, and a small bag containing THC were recovered.

The search warrant the agents were executing in searching the 42 Washington Avenue apartment was issued on November 8, ten days earlier. In the affidavit supporting the application for the warrant, DEA Special Agent Ryan Ford attested to facts demonstrating probable cause that evidence of a conspiracy to distribute, and to possess with intent to distribute, controlled substances would be found on the premises of the 42 Washington Avenue apartment. The affidavit was based on an extensive

investigation. The investigation uncovered evidence that Lisa Lambert was a primary conspirator in a fentanyl and cocaine base trafficking conspiracy run out of the 42 Washington Avenue apartment. It also established that Congo lived at the apartment and was dating Lambert.

Special Agent Ford also attested in the affidavit to his personal experience that drug traffickers frequently conceal drugs, records pertaining to drug sales, and other contraband at private places, including their own residences. Attachment B to the affidavit, entitled "Items To Be Seized," lists the types of evidence expected to be found. In addition to controlled substances and drug paraphernalia, it names "[a]ny/all cellular telephones located in the premises," "[d]ocumentary or other items of personal property that tend to identify the person(s) in the residence, occupancy, control or ownership of the respective locations to be searched," and "records . . . and receipts relating to the transportation, ordering, purchase, sale or distribution of controlled substances, and the acquisition, secreting, transfer, concealment and/or expenditure of proceeds derived from the distribution of controlled substances."

Special Agent Ford further attested to the need for a no-knock warrant. He cited a number of factors including: the proximity of the bedroom where Congo and his girlfriend stayed to a bathroom, which could lead to destruction of evidence;

information from a cooperating defendant that she[1] had seen Congo carrying what she described as a "pistol," but which she thought might be a pellet gun, and that Congo had bragged to her about killing people; an anonymous tip that "[the residents of 42 Washington Avenue] are dangerous and have guns" and that "Congo . . . has a 9mm pistol and threatened to kill my friend"; that Special Agent Ford was uncertain of the identity of at least one resident of the apartment and had no ability to determine his criminal history, access to weapons, or propensity to engage in violence; and that in his experience, drug dealers frequently possess weapons in order to protect their drugs or the proceeds of their drug sales.

On December 17, 2018, Congo was charged with one count of conspiring to distribute, and to possess with intent to distribute, cocaine base and fentanyl; one count of possessing with intent to distribute cocaine base and fentanyl; and one count of making the residence at 42 Washington Avenue available for use for the purpose of unlawfully storing, distributing, and using a controlled substance.

On March 4, 2019, Congo moved to suppress all of the evidence obtained through the search of his apartment on November 18, 2018. In the motion to dismiss, he argued that the affidavit

---

[1] The gender of the informant is not identified in the affidavit.

supporting the warrant did not establish probable cause that evidence of a crime existed within the 42 Washington Avenue apartment. Congo also contended that there was no nexus "linking purported criminal activity to either the apartment or to [his] person or property."

The district court held a hearing on the motion to suppress on May 13, 2019. At the hearing, Congo argued that the warrant lacked probable cause because the evidence supporting it was insufficient and the information it was based on was stale. The district court rejected these arguments and denied the motion to suppress.

On September 25, 2019, Congo entered into a conditional agreement to plead guilty to Count One of the indictment, conspiracy, reserving the right to appeal the district court's decision regarding the suppression motion. The court sentenced Congo to 78 months in prison, three years of supervised release, and a $100 mandatory special assessment.

**II. Analysis**

A mixed standard of review applies to denials of motions to suppress: We "review[] findings of fact for clear error and conclusions of law, including whether a particular set of facts constitutes probable cause, de novo." United States v. Graf, 784 F.3d 1, 6 (1st Cir. 2015) (quoting United States v. Belton, 520 F.3d 80, 82 (1st Cir. 2008)). Arguments not made to the district

court, however, are reviewed only for plain error. See United States v. St. Pierre, 488 F.3d 76, 79 n.2 (1st Cir. 2007). The plain error standard requires the appellant to demonstrate "(1) an error, (2) that is clear or obvious, (3) which affects his substantial rights . . . and which (4) seriously impugns the fairness, integrity, or public reputation of the proceeding." United States v. Correa-Osorio, 784 F.3d 11, 18 (1st Cir. 2015).

Congo argues that the district court committed two errors: it should have suppressed the evidence derived from the search of his backpack, and it should have found that the affidavit to the search warrant did not establish a need for a no-knock provision. We take these arguments in turn.

A. The Search of Congo's Backpack

Congo first argues that because the affidavit to the search warrant does not establish probable cause that he was a member of the conspiracy, when the officers realized the backpack that they found on the floor in the 42 Washington Avenue apartment was his, they should have ceased searching it immediately. He argues that because the search of his backpack was improper, all evidence derived from it, including the evidence recovered from the storage unit, should have been suppressed. The government contends that this argument is waived because Congo makes this argument for the first time on appeal. Congo replies that his statement in his suppression motion that there was no nexus

"linking purported criminal activity to either the apartment or to [his] person or property" was sufficient to preserve the argument. We need not decide whether this argument was waived because even under de novo review, Congo's argument is plainly incorrect.

It is well established that generally "any container situated within residential premises which are the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant." United States v. Crooker, 688 F.3d 1, 8 (1st Cir. 2012) (quoting United States v. Rogers, 521 F.3d 5, 9–10 (1st Cir. 2008)). Congo here does not challenge the validity of the warrant to search the premises generally. Many of the items listed in the attachment to the warrant detailing items to be seized are things that could reasonably be thought to be contained within a backpack, including, inter alia, controlled substances, drug paraphernalia, books and records of sales, and documents identifying the owner of the premises.

Moreover, contrary to Congo's contentions, the items found in the backpack were the kinds of items the warrant contemplated finding. Cell phones were specifically listed as "items to be seized," and the agents found cell phones in the backpack. The other items, a storage unit bill and key, a New York City parking receipt, and a New York City toll invoice, fell under several of the categories of evidence contemplated by the

warrant, including "[d]ocumentary or other items of personal property that tend to identify the person(s) in the residence, occupancy, control or ownership of the respective locations to be searched," and "records . . . and receipts relating to the transportation, ordering, purchase, sale or distribution of controlled substances, and the acquisition, secreting, transfer, concealment and/or expenditure of proceeds derived from the distribution of controlled substances."

A warrant application "must demonstrate probable cause to believe that (1) a crime has been committed -- the 'commission' element, and (2) enumerated evidence of the offense will be found at the place searched -- the so-called 'nexus' element." United States v. Roman, 942 F.3d 43, 50 (1st Cir. 2019) (quoting United States v. Dixon, 787 F.3d 55, 59 (1st Cir. 2015)). Congo makes much of the fact that the affidavit to the 42 Washington Avenue apartment search warrant application did not identify him as a member of the conspiracy. He argues further that the information against him in the warrant came from a cooperating defendant who had been convicted of crimes of dishonesty and from an anonymous tip. He points out that law enforcement failed to corroborate the information provided by either of these sources, though they had months to do so. He does not contest, however, that the warrant to search the apartment as a whole was validly granted (except as to the no-knock provision, discussed below). Nor could he, for

the affidavit to the warrant detailed a lengthy investigation which uncovered evidence establishing probable cause that Lambert, Congo's girlfriend and also a resident of 42 Washington Avenue, was involved in a drug conspiracy taking place at the apartment. As such, the required "nexus" between the evidence to be seized and the place to be searched was established. That Congo was not identified in the warrant as a co-conspirator is simply not relevant in this case to the question of whether his backpack, a container in the apartment subject to a valid search warrant, was properly subject to search.

Congo's argument that the agents had a duty to stop searching the backpack once they realized it was his is flatly wrong. The backpack was found on the floor of the 42 Washington Avenue apartment during a search pursuant to a validly issued warrant. The backpack could be reasonably expected to, and in fact did, contain evidence anticipated in the affidavit supporting the warrant. There was nothing improper about the search, and the district court did not err in not suppressing the evidence seized from the backpack or the evidence obtained as a result of the search of the backpack.

B.  The Warrant's No-Knock Provision

Police generally must knock when executing a search warrant, but "a 'no-knock' entry will be deemed reasonable if the police 'have a reasonable suspicion that knocking and announcing

their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.'" United States v. Jones, 523 F.3d 31, 36 (1st Cir. 2008) (quoting United States v. Boulanger, 444 F.3d 76, 81 (1st Cir. 2006)).

Congo concedes in his brief that he did not raise the argument that the issuance of a no-knock warrant was unjustified to the district court and that our standard of review is for plain error. He fails to demonstrate that the district court plainly erred.

Congo has the burden to show not only that the district court committed an error, but that the error was "clear or obvious." Correa-Osorio, 784 F.3d at 18. There was no clear or obvious error here. The affidavit to the search warrant contained numerous specific facts tending to show there was a reasonable suspicion that, in the particular circumstances of this case, knocking and announcing would be dangerous and could lead to the destruction of evidence. See Jones, 523 F.3d at 36. Two sources stated that Congo likely had a gun and had behaved violently (or bragged about doing so) in the past. The agents did not know the identities of all of the apartment's residents and so could not know if they had criminal histories or possessed weapons. Special Agent Ford attested that, based on his training and experience, it

was common for drug dealers to keep weapons in order to protect their drugs or the proceeds of drug sales. The affidavit established that the bedroom where Congo and his partner stayed was in close proximity to the bathroom, making destruction of evidence a concern.

In United States v. Adams, we upheld the grant of a no-knock warrant based on information from confidential informants that the defendant was engaged in drug trafficking and "ke[pt] his shit" at the hotel room to be searched, in addition to the affiant's attestation that drug dealers often have firearms to protect their product. 971 F.3d 22, 36 (1st Cir. 2020) (alteration in original). Here, there is even more evidence that a no-knock warrant was justified by serious concerns about officer safety and destruction of evidence. Congo once again argues that the information from the cooperating defendant and anonymous tip should be disregarded as untrustworthy. He ignores that the affidavit supplies other compelling reasons to be concerned about officer safety and evidence preservation. In light of the considerable evidence, and taking into account that there need only be a reasonable suspicion that a no-knock warrant is necessary, there was no clear or obvious error by the district court in not finding that the no-knock provision was unsupported.

Congo also fails to demonstrate that any error would "affect[] his substantial rights." Correa-Osorio, 784 F.3d at 18.

- 12 -

He acknowledges that the Supreme Court's holding in <u>Hudson</u> v. <u>Michigan</u>, 547 U.S. 586 (2006) forecloses suppression as a possible remedy for violations of the knock-and-announce rule. Even if the district court had found that the warrant should not have been no-knock, Congo's suppression motion would still have been denied and the case would have come out the same way. His substantial rights have not been affected.[2]

Congo argues that his substantial rights have been affected because he has been deprived of the ability to bring a civil suit over the violation of his Fourth Amendment rights. This argument is so underdeveloped as to be deemed waived. <u>See</u> <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Even if we were to consider it, Congo does not explain how the district court not ruling on this issue is what prevents him from bringing a civil suit, given that the ruling he asks for would not have changed the outcome of his suppression motion. While a criminal conviction can act as a bar to certain civil rights claims, <u>see</u> <u>Heck</u> v.

---

[2] Congo also briefly argues that "the holding in <u>Hudson</u> should be re-visited." He makes no headway with this undeveloped and frivolous argument. <u>See</u> <u>Rodriguez de Quijas</u> v. <u>Shearson/Am. Express, Inc.</u>, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case . . . the Court of Appeals should follow [it] . . . leaving to this Court the prerogative of overruling its own decisions.").

Humphrey, 512 U.S. 477, 486-87 (1994), Congo acknowledges that the ruling he seeks would not lead the court to suppress any evidence and so, presumably, would not alter his decision to plead guilty.

Finally, Congo does not demonstrate that the "fairness, integrity, or public reputation of the proceeding" has been seriously impugned. Correa-Osorio, 784 F.3d at 18. He reiterates his unsupported argument that he has no avenue for recourse for the violation of his Fourth Amendment rights, and argues that the criminal justice system and defendants generally are negatively impacted by a failure to vindicate constitutional rights. He has not, however, demonstrated how the overall fairness, integrity, or public reputation of his proceeding was seriously called into question, particularly in light of his acknowledgment that the outcome of his suppression motion would have been the same even if the trial judge had made the ruling Congo now seeks.

Congo has not shown that the district court committed plain error by not ruling that the no-knock provision was unsupported.

## III. Conclusion

The judgment of the district court is affirmed.

- 14 -